665 So.2d 26 (1995)
Dalton Artie NEVELS and Carl N. Thomas
v.
STATE of Louisiana, et al.
No. 95 CA 0100.
Court of Appeal of Louisiana, First Circuit.
November 9, 1995.
*27 Frederic L. Miller, Shreveport, for Plaintiffs-Appellants Dalton A. Nevels and Carl N. Thomas, et al.
Louis Quinn, Jr., Robert W. Scheffy, Jr., Gary, Field, Landry & Bradford, Baton Rouge, for Defendants-Appellees John W. Hogue, Jr. et al.
Gary L. Keyser, Assistant Attorney General, Baton Rouge, for Defendant-Appellee State of Louisiana.
Before SHORTESS, PARRO and KUHN, JJ.
PARRO, Judge.
This case arises out of a dispute among various property owners over their respective rights of use of certain property abutting a body of water. The trial court granted a motion for summary judgment filed by certain defendants, collectively referred to as the "Hogue Group."[1] This appeal followed. We amend in part, and as amended, affirm.

STANDARD OF REVIEW
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B). Once the mover shows that evidence establishes that there is no genuine issue of material fact, the adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. LSA-C.C.P. art. 967.

DISCUSSION
Dalton Artie Nevels and Carl N. Thomas ("Plaintiffs") filed a petition for declaratory judgment to determine their rights relative to the use of certain property abutting an old bendway of the Mississippi River commonly referred to as Yucatan Lake or Hard Times Bend.[2] As the result of a natural realignment of the river at the head of the bendway, the Mississippi River diverted from its original course around this bendway. The result of this natural diversion was the formation of a new channel known as the Yucatan Cut-off. However, this channel enlarged gradually, and a portion of the river's flow continued through the bendway. Alluvion in Hard Times Bend occurred as the result of continued accretion and created what is generally referred to as an oxbow lake known as Yucatan Lake.
The Plaintiffs, the Hogue Group, and the Other Owners are owners of various properties abutting that portion of Yucatan Lake situated in Tensas Parish, Louisiana. Plaintiffs had been using Yucatan Lake and *28 the adjacent property for many years for recreational purposes. However, attempts by the Hogue Group in recent years to prohibit public access and use of land adjacent to both Yucatan Lake and their property prompted Plaintiffs' suit. Plaintiffs filed their petition for declaratory judgment naming as defendants the Hogue Group, as well as the State of Louisiana and other defendants (see n. 2), essentially to determine the classification of this waterbody. Such a classification of Yucatan Lake would establish ownership of the disputed property resulting from accretion and/or dereliction, and thus, rights relative to its use.[3]
The Hogue Group filed a motion for summary judgment alleging that there were no genuine issues as to any material facts and they and the Other Owners were entitled to a judgment as a matter of law declaring that Yucatan Lake was a navigable river or other stream, subject to the laws of alluvion and dereliction; that the property in dispute situated between Yucatan Lake and the Mississippi River and located adjacent to the Hogue Group's property and the Other Owners' property was formed by alluvion and/or dereliction and belongs to the Hogue Group and Other Owners as the riparian owners of the alluvion; and that the Hogue Group and Other Owners owned the property above the ordinary low water mark of Yucatan Lake located adjacent to their property as the riparian owners.
As support for their contention that Yucatan Lake is a river or other stream, the Hogue Group recites a litany of facts, not only undisputed by Plaintiffs, but admitted by Plaintiffs in their petition for declaratory judgment: Yucatan Lake was part of the navigable waters of the United States and was regularly navigated by commercial river traffic until cut off from the Mississippi River; the ends of Yucatan Lake have silted up and are overgrown with trees and bushes; communication with the Mississippi River is maintained during periods of ordinary high water, with a flow of water or current from north to south existing in Yucatan Lake; in the fall, winter and spring months it is possible to navigate a fairly large boat from Yucatan Lake into the Mississippi River and back again.
In addition to these admissions, the Hogue Group cited Esso Standard Oil Company v. Jones, 233 La. 915, 98 So.2d 236 (La.1957), which dealt with classification of a body of water known as Deer Park Lake (also known as Deer Park Bend). That body of water was very similar to Yucatan Lake both in its formation and characteristics. In Esso, the court made these observations:
In the present case at the present time there is not a constant or continuous flow at low water around the bendway every day in every year, but definitely the bendway is not a lake. When it does flow it is not drainage and the bendway gets its water from the main body of the Mississippi River. A stream is not required to flow every minute of the time. In this case the bendway is characterized by definite banks on each side, a definite bed, a natural current always downstream with the main body of the Mississippi River being the source of water supply. The current is capable of carrying alluvion and of depositing it along the banks. These characteristics fulfill every possible requirement of a stream and prevent the Deer Park Bend channel from being classified as a lake or pond up to this time.
Id. at 244.
The affidavit of Mr. R.L. Hammack, a professional land surveyor, was attached to the Hogue Group's motion for summary judgment. Mr. Hammack's affidavit indicated *29 he was personally familiar with the formation of several cut-offs of the Mississippi River and had conducted and supervised land surveys of riparian boundaries on those cut-offs, including the Glasscock Cut-offs, which created Deer Park Lake, and the Yucatan Cut-off, which created Yucatan Lake. In comparing the characteristics and hydrology of the bodies of water in these old bendways, he found many distinct differences from other bodies of water characterized as "lakes." In particular, Mr. Hammack noted that the source of the water supply in the cut-offs came from the Mississippi River during months of high water when the river flowed over the banks near the ends of the cut-offs, as opposed to drainage which is the source of water supply to a lake. Another distinction found by Mr. Hammack was that the water in the cut-offs fluctuated in elevation with the fluctuation in elevation of the Mississippi River, and that such fluctuations were significantly greater than the elevation changes found in lakes. Mr. Hammack also found a current flowing in the waters of the bendways as a result of the difference in elevation between the ends of the cut-off, while currents do not normally exist in lakes. Additionally, Mr. Hammack noted that the bendways have banks and a channel typical of a navigable waterway, which is not found in lakes.
Based on his personal knowledge of the characteristics of Deer Park Lake and the facts of the Esso case, and the virtually identical nature of Yucatan Lake in the present case, Mr. Hammack deduced that Yucatan Lake was a stream by legal definition, rather than a lake, and was subject to the formation of alluvion through the accretion and/or dereliction process.
In opposition to the motion for summary judgment, Plaintiffs contended that factual issues existed which precluded granting of the summary judgment. Plaintiffs argued that one issue concerned the location of the boundary between the State of Louisiana and the State of Mississippi. Another issue concerned the federal navigational servitude. Neither of these issues represents a genuine issue of material fact for the purposes of determining the classification of the body of water known as Yucatan Lake and the rights under Louisiana law pertaining to the riparian owners as requested in the Hogue Group's motion for summary judgment. Nor did the affidavit of Dalton Artie Nevels, one of the plaintiffs in this suit, add anything beyond the original assertions of the petition for declaratory judgment. No other oppositions by any other party were filed.
The law applicable to the matter before us is found primarily in the Louisiana Civil Code. Ownership of the waters and bottoms of natural navigable water bodies rests in the State of Louisiana. LSA-C.C. art. 450; LSA-R.S. 9:1101. However, characterization of Yucatan Lake as a stream would determine ownership of the alluvion created by accretion and/or dereliction. LSA-C.C. art. 499 provides:
Accretion formed successively and imperceptibly on the bank of a river or stream, whether navigable or not, is called alluvion. The alluvion belongs to the owner of the bank, who is bound to leave public that portion of the bank which is required for the public use.
The same rule applies to dereliction formed by water receding imperceptibly from a bank of a river or stream. The owner of the land situated at the edge of the bank left dry owns the dereliction.
The "bank" of a navigable river or stream is defined as the land lying between the ordinary low and the ordinary high stage of water. LSA-C.C. art. 456.
Thus, the trial court's determination that there were no genuine issues of material fact and that the Hogue Group was entitled to summary judgment as a matter of law was correct insofar as the trial judge declared that Yucatan Lake was a stream, that any alluvion and/or dereliction belonged to the Hogue Group and Other Owners as the riparian owners, and that the Hogue Group and Other Owners owned that property located above the mean or ordinary low water mark of Yucatan Lake located adjacent to their property as the riparian owners.
However, the section of the judgment prohibiting the Plaintiffs from trespassing on the Hogue Group's property, including without limitation that portion of the property *30 located above the mean or ordinary low water mark of Yucatan Lake and the former bendway is legally incorrect. LSA-C.C. art. 499 clearly reserves to the public that portion of the bank which is required for the public use (such public use being defined by the jurisprudence). The trial court erred as a matter of law in failing to recognize Plaintiffs' rights in this regard.

DECREE
Therefore, for the foregoing reasons, that portion of the judgment declaring Yucatan Lake to be a stream, and declaring the alluvion and/or dereliction above the ordinary low water mark to be the property of the riparian owners is affirmed. We amend by adding a proviso to that section of the judgment which absolutely prohibits Plaintiffs from trespassing on that portion of the property located above the mean or ordinary low water mark, so that the section now reads as follows:
Plaintiffs should be prohibited from trespassing on the Hogue property, including without limitation that portion of the Hogue property located above the mean or ordinary low water mark of Hard Times Bend, and those portions of the former bendway above the mean or ordinary low water mark, which are now subject to the ownership rights of the Hogues and the Other Owners; provided, however, that Plaintiffs shall be entitled to use that portion of the bank which is required for the public use.
AMENDED IN PART, AND AS AMENDED, AFFIRMED.[4]
KUHN, J., concurs and will assign reasons.
KUHN, Judge, concurring.
I concur. Appellants contend a material issue of fact exists regarding the location of the boundary between Louisiana and Mississippi. Since the State of Mississippi has not been named as a party to this suit, I do not believe the trial court or this court can make a determination regarding the boundary between the two states. This opinion properly sets forth the rights of the parties with respect to the property located within Louisiana.
Appellants also assert they are entitled to certain rights pursuant to the federal navigational servitude. The rights afforded to appellants pursuant to the federal navigational servitude are no greater that the rights afforded to them under Louisiana law. This opinion correctly recognizes that the banks of Yucatan Lake are subject to public use pursuant to La.C.C. art. 456.
NOTES
[1] The Hogue Group is comprised of John Walter Hogue, Jr., individually, and in his capacity as Trustee of The John Walter Hogue, III Trust, The James Hogue Trust, The Sara Hogue Trust, The Paul Hogue Trust, The Daniel Hogue Trust, The Michael Hogue Trust, The Ester Hogue Trust, The Joseph Hogue Trust, The Benjamin Hogue Trust, The David Hogue Trust, The Samuel Asher Hogue Trust, The Joseph Stephen Hogue Trust, and The John Walter Hogue Grandchildren's Trust, and in his capacity as Successor Trustee to Gus E. Francis of The John Walter Hogue Grandchildren's Louisiana Trust and The Benjamin Philip Hogue Trust; Constance T. Hogue; John Walter Hogue, III; James Kenneth Hogue; Sara Nan Hogue; Paul Charles Frank Hogue; Daniel Mark Hogue; and Michael Stephen Hogue. In an amended petition, John W. Hogue, Jr., Trustee of The Rudye Asher Hogue Inter Vivos Trust, was added as a party defendant and is part of the Hogue Group.
[2] As a result of a peremptory exception raising the objection of nonjoinder of an indispensable party, an amended petition added several more plaintiffs and defendants, collectively referred to as "Other Owners," all of whom own property abutting Yucatan Lake, and would be affected by the declaratory judgment.
[3] Part of Plaintiffs' prayer in their petition for declaratory judgment asks the court to decree "the ownership of the beds and bottoms of Yucatan Lake in the State of Louisiana." Issues of ownership presented in an action for declaratory judgment are governed by LSA-C.C.P. art. 3654, and are reserved to those in possession who are asserting their personal ownership interest. See Lafourche Realty Company, Inc. v. Duard Eymard Company, Inc., 93-1278 (La.App. 1st Cir. 6/24/94), 638 So.2d 1138, 1139. Such is not the case here. Despite the language of their prayer, the essence of Plaintiffs' petition, as we comprehend it, is to ascertain their rights relative to this waterbody and the adjacent property. It is the classification of the waterbody, from which a determination of ownership of adjacent property formed by alluvion and/or dereliction derives, that is important to the Plaintiffs, for that would ultimately define Plaintiffs' rights of use.
[4] In their petition for declaratory judgment, Plaintiffs sought a declaration concerning the extent that the waters of Yucatan Lake constituted a part of the navigable waters of the United States and the rights of use that result to the Plaintiffs. The issue of a federal navigational servitude was not raised in the Hogue Group's motion for summary judgment, nor was it addressed by the trial court in its judgment. Therefore, this issue is not before us on appeal. Moreover, as the State observed in its appellate brief, there are many extant issues in this case which will remain after this appeal is final.