859 So.2d 901 (2003)
Inez L. ANDING, et al., Plaintiff-Appellant,
v.
Alvin B. ANDING, Sr., et ux., Defendant-Appellee.
No. 37,778-CA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 2003.
Noah, Smith, Mitchell & Johnson, L.L.P., by Jay B. Mitchell, for Appellant Inez L. Anding, et al.
Hayes, Harkey, Smith & Cascio, LLP, by C. Joseph Roberts, III, for Appellee Albert B. Anding, Sr., et ux.
Before CARAWAY, DREW and MOORE, JJ.
MOORE, J.
Plaintiffs appeal a judgment granting the defendant's motion for summary judgment to uphold a dation en paiement by which they conveyed to him their interest in the immovable property of their father's succession and denying their own motion for summary judgment declaring that the *902 dation was an absolute nullity. For the reasons set forth below, we affirm.

FACTS
The plaintiffs, Inez L. Anding, Ray Randolph Anding, Sr., Beatri Anding Albritton, Gloria Anding Albritton, and the defendant,[1] Alvin "Burt" Anding, Sr., are children of Lee Randolph Anding, who died on May 6, 1999. The deceased left a will directing the children to "share and share alike."
On June 16, 1998, approximately one year prior to his father's death, defendant obtained a judgment against his father. The judgment remained unsatisfied at the time of Lee Anding's death, and, as a result, the defendant is the prime creditor of the succession. It is alleged that the amount of the judgment exceeds the value of the succession.
Plaintiffs allege that in December of 1999, several months after the death of their father, and after their sister Inez was qualified as executrix of the succession, defendant approached his brothers and sisters regarding his status as the primary judgment creditor of their father's succession. He offered to release each of his brothers and sisters from "their share" of their father's debt if they would relinquish their interest in the immovable property of the succession, which consisted of several tracts of land totaling approximately 650 acres, while leaving the remaining movable property among them to "share and share alike." Four of the brothers and sisters,[2] the plaintiffs in this action, agreed to the proposal and during the three-day period of December 21-23, 1999 executed a dation en paiement, which was captioned "Act of Giving in Payment" (hereinafter, "Act" or "dation"). In the Act, each legatee conveyed his or her interest in the described tracts of immovable property to the defendant in exchange for "extinguishment" and "full acquittance and discharge" by defendant "of each of their respective virile portions of the indebtedness" ... "by virtue of their status as the legal heirs of Lee Anding."
For reasons undisclosed, plaintiffs subsequently filed a petition alleging several grounds to have the Act declared null and void. These claims, except one, have since been abandoned. Plaintiffs' sole claim upon which they based their motion for summary judgment is that, as a matter of law, the dation or Act is an absolute nullity because it purports to convey "a specific piece or pieces of property" belonging to the succession of their father after the succession representative was qualified, but before the administration of the succession was complete, citing Succession of Stoufflet, 95-0116 (La.App. 1st Cir.11/9/95), 665 So.2d 98, writ denied, 95-2937 (La.2/16/96), 667 So.2d 1052.[3]
Defendant opposed the motion, arguing that the rule of Succession of Stoufflet was legislatively supplanted by La. C.C. art. 938 which took effect on July 1, 1999 and filed a cross-motion for summary judgment declaring that the December 1999 dation is valid and enforceable.
*903 The trial court granted the defendant's cross-motion for summary judgment and upheld the dation, stating in the judgment that the "retroactivity aspect" of the case favored the defendant. The court was referring to the legislatively mandated retroactive application of a 2001 amendment to La. C.C. art. 938. No separate written reasons for judgment were assigned. Plaintiffs filed this appeal.

DISCUSSION
Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966(A)(2); Yarbrough v. Federal Land Bank of Jackson, 31,815 (La.App.2d Cir.03/31/99), 731 So.2d 482. The motion should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Leckie v. Auger Timber Co., 30,103 (La.App.2d Cir.01/21/98), 707 So.2d 459. The burden of proof remains with the mover. La. C.C.P. art. 966(C)(2). When a motion is made and supported, as required by La. C.C.P. art. 966, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response must set forth specific facts showing a genuine issue for trial. Otherwise, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Kennedy v. Holder, 33,346 (La.App.2d Cir.05/10/00), 760 So.2d 587; Yarbrough, 731 So.2d at 487; Bockman v. Caraway, 29,436 (La.App.2d Cir.04/02/97), 691 So.2d 815.
In this instance, both sides concede there are no material facts in dispute and both sides submit that the legal question, namely, the alleged absolute nullity of the dation, is governed by La. C.C. art. 938. Article 938 was enacted as part of the 1997 Revision of the Louisiana Law of Successions that became effective July 1, 1999. Although this article was not in the Code of 1870, the comments make it clear that the new article is consistent with the principles expressed in Civil Code Articles 2513 and 2650 which deal with warranty in the sale of succession rights. These sales were expressly permitted under former Civil Code article 2449 (1870),[4] now Civil Code article 2448.
As originally enacted in 1997, and at the time the dation was executed, Article 938 read:
Prior to the qualification of a succession representative, a successor may exercise rights of ownership with respect to his interests in the estate. Upon qualification of a succession representative, the exercise of those rights is subject to administration of the estate.
Defendant argues that the statutory language in Article 938 and the comments to the article support their position that the article authorizes an heir to exercise his ownership rights with respect to his or her interests in the estate, including entering into the type of transaction and conveyance that occurred in this case dealing with a thing of the estate. In support of *904 this reading of the article, the legislature amended Article 938 by 2001 Act No. 556, clearly authorizing an heir to deal with a "thing" in the estate. The amended version of Article 938 reads:
A. Prior to the qualification of a succession representative, a successor may exercise rights of ownership with respect to his interests in a thing of the estate as well as his interest in the estate as a whole.
B. If a successor exercises his rights of ownership after the qualification of a succession representative, the effect of that exercise is subordinate to the administration of the estate.
Section 3 of 2001 Act No. 556 declared that the amendment was interpretative, meant to clarify the original version, and "shall be applied retroactively."[5] Thus, if the original enactment of Article 938 was intended to authorize an heir to exercise his rights of ownership with respect to particular things in an estate, then the transaction or compromise that occurred in this case is valid, and we need not reach the question of "retroactivity" because there was no substantive change in the meaning of Article 938 by the 2001 amendment.
Plaintiffs contend that when it was enacted, Article 938 simply codified existing jurisprudence holding that the sale by an heir of his or her entire interest in a succession is permitted, but the sale of a particular thing or part of his interest in a succession is an absolute nullity, citing Succession of Stoufflet, supra. In Stoufflet, Paul Stoufflet sought to sell his undivided interest in his parents' succession to his brother, Oswald, on September 1, 1988 by an act of sale which specifically described the real estate comprising the family home. Three years later, on June 25, 1991 Houma Mortagage obtained a judgment against Paul Stoufflet and recorded the judgment on that day. On November 25, 1991, Paul and his brother executed a second act of sale in which they acknowledged that the September 1, 1988 sale was intended to transfer Paul's entire interest in the succession of his parents and not simply his undivided interest in the immovable property of the estate.
The petition to open the succession was filed on February 12, 1993 and Oswald was named succession representative. Houma Mortgage sought to intervene in the proceeding as a judgment creditor of Paul, but Oswald filed an exception of no right of action urging that Paul had sold his interest in the succession prior to the date Houma had recorded its mortgage. The district court overruled the exception, and the First Circuit affirmed the ruling, holding that the September 1988 sale of the family home constituted the sale of an heir's undivided interest in a specific piece of property belonging to the succession and was therefore an "absolute nullity."[6]
*905 The court went on to hold that, because the sale of a particular part of a succession was an "absolute nullity," the brothers' attempt on November 25, 1991 to ratify the 1988 sale could not be accomplished since the absolutely null original sale was deemed never to have existed. Therefore, the court concluded that the judicial mortgage attached to the heir's interest in the unopened succession when it was recorded on June 25, 1991, and, because this occurred prior to the second sale on November 25, 1991, that sale was burdened with the Houma Mortgage's lien.
Thus, the dispute over the interpretation of Article 938 is whether the phrase, a "successor may exercise rights of ownership with respect to his interests in the estate," can be construed to mean his "interest in a particular thing," or must it mean that a successor may deal only with "his entire interest in the succession" as required by Succession of Stoufflet, supra, and other cases[7] decided prior to the 1997 Revision. The former interpretation is consistent with and clearly authorized by the 2001 amendment to Article 938, while the latter interpretation would represent a codification of prior law. For the following reasons, we conclude that the phrase above means a successor may exercise rights of ownership with respect to his interest in a particular thing.
Although the 1997 Revision Comments do not contain the familiar Reporter's expression that the revised article "does not change the law" or "changes the law," as is customary when such is the case,[8] the 1997 *906 Revision comments state that the article recognizes "the ownership of estate property enjoyed by a successor prior to a formal judgment of possession, and affords a basis for his binding acts with respect to his own interests." La. C.C. art. 938 Comment (a). Comment (a) further states that "[a] person dealing with a successor may acquire such title or interest as the successor has; in particular, the rights of creditors may supersede that of a purchaser from the successor if timely asserted." Finally, although Comment (b) states that "this revision" of the succession articles "preserves the important functional distinction that has been made in prior law with reference to acts prior to and acts subsequent to qualification of a succession representative," it neither states nor implies that the new article codified existing jurisprudence or the rule of Succession of Stoufflet, supra.
We further note that the article itself refers the successor's interests in the estate, using the plural, rather than the singular, implying that the successor may deal with his various interests in the succession, rather than be limited to dealing only with his entire interest in the succession. Moreover, the legislature's act amending Article 938 clearly expressed how it intended the 1997 version of Article 938 to be construed. No doubt it wanted to loosen those restrictions against heirs dealing with their succession interests imposed by some prior jurisprudence.
According to La. C.C. art. 935, "[i]mmediately at the death of the decedent, universal successors acquire ownership of the estate and particular successors acquire ownership of the things bequeathed to them." Comment (b) to this article states that while the estate is under administration, the universal successors may not exercise the rights of the deceased, such as the right to alienate or encumber the property of the deceased, without first terminating the administration. A successor may, however, alienate or encumber his own interest in the estate even while the estate is under administration.
In this instance, four of the legatees gave his or her undivided 1/6 interest in the immovable property of the estate in exchange for remission of the succession debt attributable to their respective shares. We hold that this transaction, subject to the administration of the succession, is permitted under Article 938, as originally enacted.
Accordingly, we affirm the judgment of the trial court at appellants' costs.
AFFIRMED.
CARAWAY, J., concurs with written reasons.
CARAWAY, J., concurring.
Because of the cloud placed upon innumerable titles to immovable property caused by the Stoufflet decision, I respectfully concur to add the following:
I agree that Article 938 as originally enacted in 1997 was sufficient in its language to affirm the validity of the parties' dation. The heir's "exercise" of "rights of ownership" is not restricted in the original enactment to the use or transfer of the whole of the inheritance, but can apply to a specific piece of property that comprises a part of the inheritance. The only restriction listed in Article 938 is that the heir's exercise of ownership is "subject to administration of the estate."
I also agree that Article 938 expresses principles which were already indicated in the Civil Code before 1997. Nevertheless, by loose language in the jurisprudence prior *907 to the enactment of Article 938 and through confusion over the former concept of seizin, the notion of the exercise of ownership "subject to administration of the estate," which is now express in Article 938, was occasionally misconstrued as "absolute nullity" in certain decisions. Thus, while this court in Succession of Griffin v. Davidson, 125 So.2d 30 (La.App. 2d Cir. 1960) was eminently correct in ruling for the administratrix and setting aside the sale of the heir's interest as being "subject to administration of the estate," its misuse of the lethal language of absolute nullity led to the later erroneous ruling in Stoufflet. The creditor in Stoufflet was not an administrator or even a creditor of the estate, so that the power of administration could not have been invoked to set aside the sale of the heir's interest. Instead, the concept of absolute nullity was improperly applied in Stoufflet. It was not the law and has no application in this case.
NOTES
[1] Defendant's wife, Dorothy Harris Anding, is also a named defendant.
[2] One of the defendant's sisters, Vivian Anding Bennett, declined to participate in the agreement.
[3] Stoufflet is the latest of a sporadic line of pre-1997 Revision cases beginning in the early nineteenth century which held that an heir may sell his entire interest in a succession, subject to the charges with which his interest is burdened, but the sale of an heir's undivided interest in a specific piece of property belonging to a succession is an "absolute nullity."
[4] Former Civil Code article 2449, in identifying the proper objects of a sale provided that "an inheritance, the rights, titles and interests to an inheritance or to any parts therof" "may be sold."
[5] Additionally, Section 2 of Act 556 also enacted La. R.S. 9:2503 states:

§ 2503. Exercise of succession rights; remedial provisions
A. Any alienation, lease, or encumbrance of immovable property made by a successor prior to the date that Civil Code Article 938, as amended and reenacted by Acts 2001, No. 556, becomes effective, that would be valid under the provisions of Civil Code Article 938, is valid.
B. An action to annul an alienation, lease, or encumbrance of immovable property owned by a decedent at his death made by a successor prior to the appointment of a succession representative must be brought within a peremptive period of one year from the effective date of this Section.
[6] The Stoufflet court relied on an earlier case from this circuit, Succession of Griffin v. Davidson, 125 So.2d 30 (La.App. 2d Cir. 1960), for the proposition that the sale of an heir's undivided interest in a particular piece of property belonging to a succession is an absolute nullity, although the sale of his entire interest in the succession, subject to the charges with which his interest is burdened, can be legally accomplished. It was the "absolute nullity" characterization of the sale in Succ. of Griffin, supra, concerning the succession administrator's power to set aside a sale subject to administration that the Stoufflet court used as a vehicle to allow a stranger to the succession, a third party creditor of an heir, to nullify and set aside the 1988 sale of Paul Stoufflet's interest in the family home to his brother.

In Succ. of Griffin, supra, J.L. Griffen died intestate, survived by his wife Thelma and his son James. The estate consisted of some movable property and a parcel of real estate. After his father died, but before letters of administration were issued, James was adjudicated a bankrupt. One of his assets listed in the bankruptcy proceeding was his interest in his father's estate. The trustee sold the property, subject to Thelma's usufruct, at auction to one Davidson $850.
Thelma, as administratrix of the succession, subsequently obtained an order to sell the property at private sale to cover the debts owed by the succession. Davidson opposed the sale, claiming ownership of an undivided one-half interest in the property free of all succession debt and subject only to Thelma's usufruct. The trial court declared the sale to Davidson to be an absolute nullity on grounds that the trustee in bankruptcy could not seize and sell succession property.
On appeal, this court noted that while normally a trustee in bankruptcy is vested with title to any property owned by the bankrupt and can sell same a public sale, it is obvious that the trustee can only obtain such title as the bankrupt owned, and not better. Here, the bankrupt owned an undivided one-half interest in the succession of James L Griffen, subject to the usufruct of the deceased's widow, Thelma Griffen. He did not own an undivided interest in the particular piece of immovable property belonging to the succession which the trustee attempted to sell to E.J. Davidson.
[7] Succession of Griffin v. Davidson, supra at note 6; Succession of Cutrer v. Curtis, 341 So.2d 1209 (La.App. 1st Cir.1976), writ denied 343 So.2d 201 (La.1977); Fortson v. Lake, 176 So.2d 703 (La.App. 4th Cir.1965); Armstrong v. Bates, 61 So.2d 466 (La.App. 1st Cir.1952); Mayo v. Stroud, 12 Rob. 105 (La.1845), 1845 WL 1688. But cf. Wolf v. Carter, 131 La. 667, 60 So. 52 (La.1912); Saucier v. Crichton, 147 F.2d 430 (5th Cir.1945); see also, Giroir v. Dumesnil, 248 La. 1037, 184 So.2d 1 (La. 1966).
[8] Although the comments to the code cannot supersede the clear language of a code article, they are often used for guidance. The lack of a statement in this regard by the reporter regarding this new article implies that the question of whether the article changes existing law is an open question.