938 So.2d 766 (2006)
Randall J. ANGLIN, David G. Anglin, Beth Anglin Mora, Pamela Anglin Rowell and Andrew Darryl Anglin
v.
William H. ANGLIN and Louisiana Federal Land Bank Association, FLCA.
No. 2005-CA-1233.
Court of Appeal of Louisiana, First Circuit.
June 9, 2006.
Phil E. Miley, Miley Law Firm, Baton Rouge, Counsel for Plaintiffs-Appellants, Randall J. Anglin, David G. Anglin, Beth Anglin Mora, Pamela Anglin Rowell and Andrew Darryl Anglin.
Charles L. Stern, Jr., Rose McCabe LeBreton, Alan M. Cohen, Steeg and O'Connor, L.L.C., New Orleans, Counsel for Defendant-Appellee, *768 Louisiana Land Bank Association, FLCA.
Panel composed of Ad Hoc Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY, and FREDERICKA HOMBERG WICKER.
SUSAN M. CHEHARDY, Judge Ad Hoc.
This appeal arises in a dispute among family members over ownership interests in 277 acres of land in Washington Parish. The plaintiffs appeal a summary judgment that dismissed their claims against a bank that holds a mortgage on the property. We affirm.

FACTS
On April 2, 2002 Randall Anglin, David G. Anglin, Beth Anglin Mora, Pamela Anglin Rowell, and Andrew Darryl Anglin filed suit against William H. Anglin and the Louisiana Federal Land Bank Association, FLCA ("LFLBA"). The plaintiffs sought to annul acts of donation by which they had transferred their interests in the Washington Parish property to their brother, William Anglin. In addition, they sought a declaration that William Anglin's mortgage of the property in favor LFLBA does not encumber their interests. Finally, they sought an order directing William Anglin to convey to the plaintiffs an undivided one-seventh (1/7) interest each in the property.
According to the petition, the property originally belonged to Baty Anglin and his wife, Maggie Anglin. Baty Anglin and Maggie Anglin had four children; after Baty Anglin's death, their children were recognized in a judgment of possession as co-owners of an undivided one-half interest in the property and Maggie Anglin was recognized as co-owner of the other undivided one-half interest.
Hillard Anglin, a son of Baty Anglin and Maggie Anglin, was father of seven children: the five plaintiffs, William Anglin, and Kenneth R. Anglin (who is not party to this suit). After both Hillard Anglin and Maggie Anglin died, the plaintiffs, William Anglin, and Kenneth Anglin were heirs to their father's interests in the property. Before opening the judicial successions, the plaintiffs and William Anglin discussed partitioning the property, in which other relatives had co-ownership interests.[1]
According to the petition, William Anglin persuaded the plaintiffs to donate their interests to him in order to conveniently handle judicial partition of the property. The petition alleged that William Anglin promised he would not record the acts of donation and that he would transfer the plaintiffs' proportionate interests in the property back to them after accomplishing the partition.
The plaintiffs' donations of their interests to William Anglin took place on March 30, 1999, by two Acts of Donation. One act, which purported to donate the interests of Randy Anglin, David Anglin, Beth Mora, Kenny Anglin, and Pam Anglin Rowell to William H. Anglin, was recorded in Washington Parish Conveyance Book 515, Page 462. The other act of donation, which purported to donate the interest of Andy Darryl Anglin to William H. Anglin, was recorded in Washington Parish Conveyance Book 515, Page 460. Both Acts of Donation were recorded on February 8, 2001.
By Judgment of Possession signed September 7, 2000, William Anglin, the plaintiffs, and Kenneth Anglin were recognized *769 as heirs and legatees of their grandmother, Maggie A. Anglin, and entitled to ownership of an undivided twelve and one-half percent (12½%) undivided interest in an undivided one-half (1/2) community interest in the property.[2]
In a Judgment of Possession dated July 16, 2001, the Acts of Donation among the heirs of Hillard Anglin to William H. Anglin were recognized by the court and William H. Anglin was determined to be the owner of all the interest of Hillard Anglin in the property, consisting of an undivided thirty-seven and one-half percent (37 ½%) interest.[3]
William Anglin then obtained the remaining interests in the property, partly by act of sale from one co-owner and partly by partition proceedings against the other two, in which he was the successful bidder for the property at the judicial auction.
On September 11, 2001, William Anglin mortgaged the property to LFLBA for $400,000.00.
Several months later the plaintiffs filed this suit, seeking to annul their donations on the grounds of incapacity, fraud, lack of consideration, error, and invalidity of form, and to cancel the mortgage insofar as it affects their alleged interests.
Early in the proceedings the trial court granted an exception of no cause of action in favor of LFLBA, which was reversed on appeal, and the matter was remanded for further proceedings.[4] The trial court then denied a motion for summary judgment by William Anglin. After that LFLBA brought its own motion for summary judgment, urging that the claims against it must be dismissed because LFLBA was entitled to rely on the public records in granting the mortgage, and the public records showed that William Anglin was owner of the property.
On June 23, 2004 the trial court signed a judgment granting the motion for summary judgment, dismissing the plaintiffs' action with prejudice at their cost, solely with respect to LFLBA.
On appeal the plaintiffs assert the trial court committed legal error in granting a summary judgment and holding that in 1999 a person could transfer a specific thing before being placed in possession in succession proceedings.

LAW AND ANALYSIS
Summary judgment is warranted only if there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966(C)(1). A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751.
The Court of Appeal reviews summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Nevels v. State, 95-100 (La.App. 1 Cir. 11/9/95), 665 So.2d 26.
In this case, the factual disputes do not pertain to liability of LFLBA. The *770 issue is whether LFLBA is entitled to judgment as a matter of law. That is, was LFLBA justified in relying on the document trail, in particular the 1999 acts of donation by the plaintiffs, as establishing a clear chain of title in William Anglin?
"Succession is the transmission of the estate of the deceased to his successors. The successors thus have the right to take possession of the estate of the deceased after complying with applicable provisions of law." La.C.C. art. 871. "Succession occurs at the death of a person." La.C.C. art. 934. "Immediately at the death of the decedent, universal successors acquire ownership of the estate and particular successors acquire ownership of the things bequeathed to them." La.C.C. art. 935.
"Prior to the qualification of a succession representative, a successor may exercise rights of ownership with respect to his interests in a thing of the estate as well as his interest in the estate as a whole." La.C.C. art. 938(A).
Neither secret claims or equities nor other matters outside the public records shall be binding on or affect third parties. La.R.S. 9:2721(A).[5]

McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909), established long ago the necessity of relying on the public records rather than on unrecorded instruments or word of mouth when dealing with title to immovable property. The Legislature has even defined the "third parties" protected by the doctrine in LSA-R.S. 9:2722. Those parties include "purchasers, mortgagees, grantees, vendees, or lessees".
G.I. Joe, Inc. v. Chevron U.S.A., Inc., 561 So.2d 62, 65 (La.1990).
The public records doctrine does not create rights in a positive sense, but rather has the negative effect of denying the effectiveness of certain rights unless they are recorded. Camel v. Waller, 526 So.2d 1086, 1089-1090 (La.1988). Third persons are not allowed to rely on what is contained in the public records but can instead rely on the absence from the public record of those interests that are required to be recorded. Id. at 1090. See also, Succession of Horn, 02-430 (La.App. 5 Cir. 9/30/02), 827 So.2d 1241, 1246.
A purchaser of immovable property need only look to the public records to determine ownership and, if such records show no adverse claims of ownership, the purchaser obtains good title from the record owner notwithstanding the purchaser's personal knowledge of title defects outside of the record. Wood v. Morvant, 321 So.2d 914 (La.App. 1 Cir. 1975).
The plaintiffs-appellants contend their acts of donation are null for several reasons, the most relevant to this appeal being their contention that at the time of the donations, which were prior to the opening of judicial succession for either Maggie Anglin or Hillard Anglin, an heir could not transfer his undivided interest in a specific piece of property belonging to a succession.
They rely on Succession of Stoufflet, 95-0116 (La.App. 1 Cir. 11/9/95), 665 So.2d 98, writ denied, 95-2937 (La.2/16/96), 667 So.2d 1052. In Stoufflet, the court held that the sale of an heir's undivided interest in a specific piece of property belonging to a succession is an absolute nullity. The court followed earlier jurisprudence.[6]
*771 Defendant-appellee LFLBA points out, however, that in 1997 the Legislature enacted Acts 1997, No. 1421, § 1, eff. July 1, 1999, which created La.C.C. art. 938. As originally written, Art. 938 provided in pertinent part, "Prior to the qualification of a succession representative, a successor may exercise rights of ownership with respect to his interests in the estate." (Emphasis added.) The Legislature later amended Art. 938 by Acts 2001, No. 556, § 1, eff. June 22, 2001, to provide, "Prior to the qualification of a succession representative, a successor may exercise rights of ownership with respect to his interests in a thing of the estate as well as his interest in the estate as a whole."[7] Obviously, applying Article 938 would make the plaintiffs' purported donation of their interests in the property effective.
The plaintiffs assert that Article 938 cannot be applied here, because its effective date in the original legislation was July 1, 1999, and their Acts of Donation were dated March 30, 1999, prior to the effective date of the legislation.
Another part of Acts 2001, No. 556, was § 2, which enacted La.R.S. 9:2503, eff. June 22, 2001. La.R.S. 9:2503 provides:
A. Any alienation, lease, or encumbrance of immovable property made by a successor prior to the date that Civil Code Article 938, as amended and reenacted by Acts 2001, No. 556, becomes effective, that would be valid under the provisions of Civil Code Article 938, is valid.
B. An action to annul an alienation, lease, or encumbrance of immovable property owned by a decedent at his death made by a successor prior to the appointment of a succession representative must be brought within a peremptive period of one year from the effective date of this Section.
The plaintiffs contend that, because their suit to annul their acts of donation was brought within one year of June 22, 2001, the effective date of Acts 2001, No. 556, pursuant to La.R.S. 9:2503, the motion for summary judgment should have been denied because the dates on the acts of donation as well as the judgments of possession were sufficient to place a third party on notice of the invalidity of the acts of donation.
We disagree with the plaintiffs' arguments, however. We are in agreement with LFLBA's argument that the cases leading to Succession of Stoufflet, supra, are erroneous in their use of the term "absolute nullity" with regard to transfers of immovable property by heirs lacking a judgment of possession. Instead, we note that the Legislature's enactment of Article 938 was a codification of the principle that "the ownership of estate property [is] enjoyed by a successor prior to a formal judgment of possession, and affords a basis *772 for his binding acts with respect to his own interest." Revision Comment (a) to La.C.C. art. 938.
We find the following discussion of these issues by the Second Circuit persuasive. In Anding v. Anding, 37,778, pp. 4-10 (La.App. 2 Cir. 10/29/03), 859 So.2d 901, 903-906, the court considered the validity of a dation en paiement by which four siblings conveyed their interests in the immovable property of their father's succession to the fifth sibling who was a creditor of the estate. The plaintiffs sought to have the dation declared an absolute nullity:
In this instance, both sides concede there are no material facts in dispute and both sides submit that the legal question, namely, the alleged absolute nullity of the dation, is governed by La. C.C. art. 938. Article 938 was enacted as part of the 1997 Revision of the Louisiana Law of Successions that became effective July 1, 1999. Although this article was not in the Code of 1870, the comments make it clear that the new article is consistent with the principles expressed in Civil Code Articles 2513 and 2650 which deal with warranty in the sale of succession rights. These sales were expressly permitted under former Civil Code article 2449 (1870), now Civil Code article 2448. [Footnote omitted.]
As originally enacted in 1997, and at the time the dation was executed, Article 938 read:
Prior to the qualification of a succession representative, a successor may exercise rights of ownership with respect to his interests in the estate. Upon qualification of a succession representative, the exercise of those rights is subject to administration of the estate.
Defendant argues that the statutory language in Article 938 and the comments to the article support their position that the article authorizes an heir to exercise his ownership rights with respect to his or her interests in the estate, including entering into the type of transaction and conveyance that occurred in this case dealing with a thing of the estate. In support of this reading of the article, the legislature amended Article 938 by 2001 Act No. 556, clearly authorizing an heir to deal with a "thing" in the estate. The amended version of Article 938 reads:
A. Prior to the qualification of a succession representative, a successor may exercise rights of ownership with respect to his interests in a thing of the estate as well as his interest in the estate as a whole.
B. If a successor exercises his rights of ownership after the qualification of a succession representative, the effect of that exercise is subordinate to the administration of the estate.
Section 3 of 2001 Act No. 556 declared that the amendment was interpretative, meant to clarify the original version, and "shall be applied retroactively." Thus, if the original enactment of Article 938 was intended to authorize an heir to exercise his rights of ownership with respect to particular things in an estate, then the transaction or compromise that occurred in this case is valid, and we need not reach the question of "retroactivity" because there was no substantive change in the meaning of Article 938 by the 2001 amendment.
Plaintiffs contend that when it was enacted, Article 938 simply codified existing jurisprudence holding that the sale by an heir of his or her entire interest in a succession is permitted, but *773 the sale of a particular thing or part of his interest in a succession is an absolute nullity, citing Succession of Stoufflet, supra.

* * *
Thus, the dispute over the interpretation of Article 938 is whether the phrase, a "successor may exercise rights of ownership with respect to his interests in the estate," can be construed to mean his "interest in a particular thing," or must it mean that a successor may deal only with "his entire interest in the succession" as required by Succession of Stoufflet, supra, and other cases decided prior to the 1997 Revision. The former interpretation is consistent with and clearly authorized by the 2001 amendment to Article 938, while the latter interpretation would represent a codification of prior law. For the following reasons, we conclude that the phrase above means a successor may exercise rights of ownership with respect to his interest in a particular thing.
Although the 1997 Revision Comments do not contain the familiar Reporter's expression that the revised article "does not change the law" or "changes the law," as is customary when such is the case, the 1997 Revision comments state that the article recognizes "the ownership of estate property enjoyed by a successor prior to a formal judgment of possession, and affords a basis for his binding acts with respect to his own interests." La.C.C. art. 938, Comment (a). Comment (a) further states that "[a] person dealing with a successor may acquire such title or interest as the successor has; in particular, the rights of creditors may supersede that of a purchaser from the successor if timely asserted." Finally, although Comment (b) states that "this revision" of the succession articles "preserves the important functional distinction that has been made in prior law with reference to acts prior to and acts subsequent to qualification of a succession representative," it neither states nor implies that the new article codified existing jurisprudence or the rule of Succession of Stoufflet, supra.
We further note that the article itself refers the successor's interests in the estate, using the plural, rather than the singular, implying that the successor may deal with his various interests in the succession, rather than be limited to dealing only with his entire interest in the succession. Moreover, the legislature's act amending Article 938 clearly expressed how it intended the 1997 version of Article 938 to be construed. No doubt it wanted to loosen those restrictions against heirs dealing with their succession interests imposed by some prior jurisprudence.
According to La.C.C. art. 935, "[i]mmediately at the death of the decedent, universal successors acquire ownership of the estate and particular successors acquire ownership of the things bequeathed to them." Comment (b) to this article states that while the estate is under administration, the universal successors may not exercise the rights of the deceased, such as the right to alienate or encumber the property of the deceased, without first terminating the administration. A successor may, however, alienate or encumber his own interest in the estate even while the estate is under administration.
In this instance, four of the legatees gave his or her undivided 1/6 interest in the immovable property of the estate in exchange for remission of the succession debt attributable to their respective shares. We hold that this transaction, subject to the administration of the succession, *774 is permitted under Article 938, as originally enacted.
We find this a convincing analysis of the status of the law, and that it was reasonable for a third-party such as LFLBA to believe that the enactment of La.C.C. art. 938 and its subsequent amendment justified its reliance on the public record as establishing William Anglin's ownership of the property and to support imposing a mortgage against the property in this case.
For the foregoing reasons, the judgment in favor of defendant Louisiana Federal Land Bank Association, FLCA is affirmed. The costs of this appeal are assessed against the plaintiffs-appellants.
AFFIRMED.
NOTES
[1] In addition to the seven children of Hillard Anglin, the other co-owners were Sally Anglin Kemp, Patricia Anglin Renfro, and Anne M. Smith.
[2] In the Matter of the Succession [of] Maggie A. Anglin, No. 44172, Nineteenth Judicial District Court, Parish of East Baton Rouge.
[3] Succession of Hillard Anglin, No. 12035, Twenty-Second Judicial District Court, Parish of Washington.
[4] Anglin v. Anglin, XXXX-XXXX (La.App. 1 Cir. 12/31/03), 864 So.2d 904 (not designated for publication).
[5] Subsection A was repealed after the events at issue here, by Acts 2005, No. 169, § 8, eff. July 1, 2006.
[6] "The law of Louisiana is well settled that the sale of an heir's undivided interest in a particular piece of property belonging to a succession is an absolute nullity, although the sale of his entire interest in the succession, subject to the charges with which his interest is burdened, can legally be accomplished." Succession of Griffin v. Davidson, 125 So.2d 30, 32 (La.App. 2 Cir. 1960). See also, Houma Mortgage & Loan, Inc. v. Stoufflet, 602 So.2d 1147, 1149 (La.App. 1 Cir.1992), and cases cited therein: "Under the law of Louisiana, . . . only the heir's share or interest in the succession, inclusive of all its rights, obligations and charges, can be seized and sold, and not the undivided interest an heir may have in a specific piece of the property of the succession."
[7] "Acts 2001, No. 556, § 1 designated the existing article as par. A and rewrote the same; and added par. B, providing for the subordination of the successor's rights to the administration of the estate." Historical and Statutory Notes following La.C.C. art. 938. In addition, Section 3 of Acts 2001, No. 556 provides: "The provisions of this Act are remedial and interpretative and shall be applied retroactively."