615 So.2d 285 (1993)
STATE of Louisiana
v.
Joey L. BARRAS and Kip J. Barras.
No. 92-KK-2065.
Supreme Court of Louisiana.
February 22, 1993.
Dissenting Opinion March 8, 1993.
Rehearing Denied March 25, 1993.
John Felton Blackwell, New Iberia, for applicant.
Richard P. Ieyoub, Atty. Gen., Bernard E. Boudreaux, Jr., Dist. Atty., Jacque Cousin, Asst. Dist. Atty., for respondent.
Newman Trowbridge, Jr., Darnall, Biggs, Trowbridge, Supple & Cremaldi, Franklin, amicus curiae, for Louisiana Landowners Assn., Inc.
Michael Osborne, Christopher Gobert, Osborne, McComiskey & Gobert, Metairie, Robert Wiygul, Michael A. Stroud, New Orleans, amicus curiae, for Coalition to Restore Coastal Louisiana and Common Claws, Inc.
William H. Sanders, Jena, amicus curiae, for William H. Sanders
Mack E. Barham, Robert E. Arceneaux, Matthew K. Brown, New Orleans, amicus *286 curiae, for Warren deSambourg, Mary Burns deSambourg, Albert L. Shell, Rosalie E. Tilloy Schell, Sadie Perino, Joseph Perino, Joann Perino, Linda Perino, Charles Mancuso, Angelina L. Mancuso, Joseph Siebert Sr., Mary S. Siebert, Marie E. Melerine, Anthony LaGreco, Jr., Salvadore DiCarlo, Emile LaGreco, Joseph LaGreco, Linda M. LaGreco, Edmond E. Himel, Jr., Henry G. Heier.
WATSON, Justice.[1]
Defendants, Joey Louis Barras and Kip J. Barras, were convicted of violating LSA-R.S. 14:63.3 by remaining upon property belonging to another after being forbidden. Following their bench trial, both defendants were sentenced to six months in jail, suspended, with unsupervised probation and a special condition of not reentering the property. Each was also fined $300 and costs or 30 days in the parish jail. The court of appeal affirmed the trial court. State v. Barras, 602 So.2d 301 (La.App. 3d Cir.1992). A writ was granted to review chiefly the question of whether defendants were proven to be on privately owned property. 608 So.2d 154 (La.1992).
Section 27, Township 12 South, Range 9 East, Iberia Parish, is part of two tracts sold by the New Orleans Pacific Railway Company to Frank B. Williams in 1893 and 1896. The "indentures" selling the property do not mention any navigable streams. At the time of the alleged offense, 600 acres of Section 27 were leased by Williams, Inc. to the Black Bayou Crawfish Club. The leased property lies within the guide levees of the Atchafalaya River.

STIPULATION
At trial, the state and the defendants stipulated as follows:
1.
Joey Barras and Kip Barras are charged with violating R.S. 14:63.3, Remaining in a Place after Having Been forbidden to do so.
2.
Joey Barras and Kip Barras were each orally forbidden to remain by persons or representatives of Williams, Inc. purportedly by virtue of the ownership of Williams, Inc. in lands lying within the Atchafalaya Basin within Iberia Parish on which Joey Barras and Kip Barras were subsequent to said warning actively engaged in commercial crawfish harvesting.
3.
The lands are owned by Williams, Inc. where the aforesaid offenses occurred and are part of the Atchafalaya Basin ecological system and are situated within the Atchafalaya Basin levees in Iberia Parish.
4.
At all times pertinent herein, these areas are inundated by waters of the Atchafalaya River and its distributaries and are submerged on a yearly basis for up to 6 months as evidenced by the fact that these lands produce crawfish in such sufficiency as to make them productive for the commercial harvesting of crawfish.

FACTS REFLECTED IN THE RECORD
Kip and Joey Barras fish commercially in the Atchafalaya Basin. To harvest crawfish in Section 27, they put their boats in the water at Ruez Landing, a public boat landing on the levee, and travel less than five minutes by water. They were never seen on the property except in their boats.
*287 A witness, Clyde L. Johnson, Jr., a member of the Black Bayou Crawfish Club, testified that he had seen Joey and Kip Barras boating on or near the property. Kip was entering the pipeline canal which traverses Section 27 from "the body of water near Ruez Landing just inside the levee." (Tr. 54). That body of water is Little Lake Long. Joey was also seen running crawfish traps north of the pipeline canal after being warned that the property was private. The origin and ownership of the pipeline canal are unknown. Compare Vaughn v. Vermilion Corp., 444 U.S. 206, 100 S.Ct. 399, 62 L.Ed.2d 365 (1979).
Another member of the Crawfish Club, Roy Champagne, saw Kip Barras crawfishing in a slew north of the pipeline canal. Champagne had previously told Kip not to put out his traps on the leased premises.
Rudy C. Sparks, a vice president of Williams, Inc., is responsible for management of the corporation's land and timber. Like the Barras brothers, he generally reaches Section 27 by boat from Ruez Landing. The corporation owns the 649 acres of Section 27 by deed. Williams, Inc., also claims ownership of accretion between the eastern boundary of that section and Lower Lake Long Pass, a distributary of the Atchafalaya River. (Forty-nine acres of Section 27 are west of the west guide levee; they are not included in the Crawfish Club lease; they are not involved in the case.)
Defendant, Joey Barras, testified and admitted virtually all elements of the charge. He testified that he put in at Ruez Landing, proceeded into the pipeline canal, remained in his boat and ran his crawfish traps in an area about five minutes from the landing. He estimated that the land over which he crawfished was under water six or seven months of the year. Some of the land in the vicinity remains flooded, but other higher areas stay dry. He crawfished by tying the traps to a tree and lowering them to the bottom, which is from six inches to six feet under water.

DEFENDANTS' ARGUMENTS
The defendants present two legal arguments in attempting to reverse their convictions. They argue: (1) that the area where they crawfished was subject to public use, being banks of navigable rivers or streams under Civil Code article 456; and (2) that the lower courts erred in holding that the area was covered by "flood waters." Various codal articles are quoted:
LSA-C.C. art. 450:
Public things are owned by the state or its political subdivisions in their capacity as public persons.
Public things that belong to the state are such as running waters, the waters and bottoms of natural navigable water bodies, the territorial sea, and the seashore.
Public things that may belong to political subdivisions of the state are such as streets and public squares.
LSA-C.C. art. 452:
Public things and common things are subject to public use in accordance with applicable laws and regulations. Everyone has the right to fish in the rivers, ports, roadsteads, and harbors, and the right to land on the seashore, to fish, to shelter himself, to moor ships, to dry nets, and the like, provided that he does not cause injury to the property of adjoining owners.
The seashore within the limits of a municipality is subject to its police power, and the public use is governed by municipal ordinances and regulations.
LSA-C.C. art. 456:
The banks of navigable rivers or streams are private things that are subject to public use.
The bank of a navigable river or stream is the land lying between the ordinary low and the ordinary high stage of the water. Nevertheless, when there is a levee in proximity to the water, established according to law, the levee shall form the bank.
The beds of navigable waters are insusceptible of private ownership. LSA-R.S. 9:1107; Gulf Oil Corporation v. State Mineral Board, 317 So.2d 576 (La.1975). Professor Yiannopoulos points out in his Louisiana Civil Law Treatise on Property[2] *288 that the banks of a navigable river are private things subject to public use, while swamp lands subject to overflow are private things. The crawfish bottoms, which are covered with water only part of the year and vary in depth from six inches to six feet, do not qualify as navigable waters.
Two exhibit maps depicting the area are missing from the record. However, the court has the benefit of a small map agreed to by the parties at oral argument; the map reflects the relative location of Ruez Landing, Little Lake Long, Lower Lake Long Pass, the pipeline canal and Section 27. The record is otherwise sparse.
The Atchafalaya River has more than one channel. This property is located about four miles from the main channel but is adjacent to a distributary, Lower Lake Long Pass.
The pipeline canal runs east and west, cutting into the property from Little Lake Long, which is close to the west guide levee. The pipeline canal crosses the middle of Section 27 but does not reach Lower Lake Long Pass. Witness Sparks testified that the east end of the canal had silted up to some extent. On the opposite side, Lower Lake Long Pass flows between Grand Lake and the Lake Fausse Pointe Cut. This section of land was considered in State v. Capdeville, 146 La. 94, 83 So. 421 (1919), which correctly stated:
All of these lakes form a connected system, whose upper or northern end unites, through various bayous and lakes, with the waters of the Atchafalaya river (the Atchafalaya river seeming to lose its identity in the many bayous and streams some distance north of the head of these lakes) and on the south or southeast, the waters of all find their way through Grand Lake, Six-Mile Lake, and the Lower Atchafalaya river (which reappears) into the Atchafalaya Bay, and thence into the Gulf of Mexico. 83 So. at 424.
The Capdeville case held that the bed of Little Lake Long belonged to the State of Louisiana by virtue of its inherent sovereignty. It was not swamp land granted by Congress to the state. However, the crawfish area is not part of Little Lake Long; the map and the descriptions in the record show it to be a backwater off the pipeline canal.
The public has a traditional right to fish from boats in the navigable waters of the state. LSA-C.C. art. 452; Yiannopoulos, supra, § 58; 33 U.S.C. § 10. Regulation of fishing and shellfishing is under the exclusive control of the Wildlife and Fisheries Commission. LSA-R.S. 56:3(A).
The trial court recognized that this property lies within the levees of the Atchafalaya River but concluded that it was not part of the Atchafalaya River's banks. The court of appeal decided that the area comprised part of the Atchafalaya River's flood plain. The record supports these conclusions.
The Barras brothers were crawfishing on flooded swamp land, not on the submerged banks of a navigable stream or in navigable waters. The evidence establishes with the requisite certainty, LSA-R.S. 15:271 (the state must prove each element of a crime beyond a reasonable doubt), that they were on privately owned property and not on private property subject to public use or public navigable waters.
For the foregoing reasons, the trial court judgment convicting defendants is affirmed.
AFFIRMED.
LEMMON, J., concurs and assigns reasons.
DENNIS, J., dissents with reasons.
LEMMON, Justice, concurring.
Defendants asserted the affirmative defense that they were crawfishing over lands owned by Williams, Inc. which constituted the bank of the Atchafalaya River under La. Civ. Code art. 456 and were therefore private lands subject to public use.
*289 They contended that Section 27 lay between the ordinary high and the ordinary low stages of the River, being covered at high stage and uncovered at low stage by waters directly or indirectly from the River.
The bank of the navigable stream, contemplated by Article 456 as private land subject to public use, is located within the bed or channel of the stream below the point that contains the normal flow of the waters. Defendants' affirmative defense depends on judicial acceptance of their interpretation of Article 456, which we hereby reject.
DENNIS, Justice, dissenting.
I respectfully dissent.
The state was required to prove beyond a reasonable doubt that the defendants "without authority [went] into or upon or remain[ed] in or upon ... immovable property, which belongs to another ... after being forbidden to do so ... by any owner, lessee, or custodian...." La.R.S. 14:63.3. The defendants conceded that they went onto submerged lands owned by another after being duly forbidden. But they contend that the state failed to prove beyond a reasonable doubt that they did so "without authority" as required by the statute.
Defendants rely, for their authority as members of the public to traverse and use the property, on La.C.C. art. 456, which provides that "[t]he banks of navigable rivers or streams are private things that are subject to public use." Further, the article defines the bank of a navigable river or stream as "the land lying between the ordinary low and the ordinary high stage of the water. Nevertheless, when there is a levee in proximity to the water, established according to law, the levee shall form the bank."
It is undisputed that the property upon which the defendants are accused of trespassing is within the Atchafalaya basin, which contains navigable rivers and streams, and is also inside of levees in proximity to the waters. Therefore, the state had the burden of proving that the property was not part of the bank of a navigable river or stream under either of the statutory definitions. In my opinion, because of the complex topography, the uncertainties as to water sources, and other vicissitudes of the present case, even after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found beyond a reasonable doubt that the property in question was not subject to public use. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mussall, 523 So.2d 1305 (La. 1988).
NOTES
[1] In order to accommodate the eight-justice court created by the Consent Decree in Chisom v. Edwards, No. 86-4075(A) (E.D.La.1992), and by Act 512 of 1992, Louisiana Supreme Court Rule IV has been amended. Under amended Rule IV, writ applications are assigned to rotating panels of seven justices. All cases docketed, including writs granted, are also assigned to rotating panels of seven justices. The panels may differ. Seven justices are responsible for each docketed case through final decision and rehearing, if necessary. All justices may participate fully in conference discussion of writ applications and opinions.

Pursuant to Rule IV, Part 2, § 3, Calogero, C.J. was not on the panel which heard and decided this case.
[2] A.N. Yiannopoulos, W.R. Irby Professor of Law, Tulane University, Louisiana Civil Law Treatise, Vol. 2, Property, § 69 (3rd ed., West Publishing Company, St. Paul, Minnesota, 1991).