# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-1428

**BUCKSKIN HUNTING CLUB**

**VERSUS**

**BUDDY BAYARD, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 94884
HONORABLE EDWARD LEONARD, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Marc T. Amy, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Cooks, J., concurs.**

**James W. Schwing**
**411 Iberia Street**
**New Iberia, LA   70560**
**(337) 365-2445**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
  **Buckskin Hunting Club**

**Frank Edward Barber**
**Post Office Box 9207**
**New Iberia, LA   70562-9207**
**(337) 364-3629**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
  **Buddy Bayard**
  **Carrol Bayard**
  **Kurt Boudreaux**
  **Oswald Buteaux**
  **Cory Bourque**
  **Ossie Romero**
**Roger Boughton, Jr.**

**5405 Leona Drive**
**New Iberia, LA   70560**
**COUNSEL FOR APPELLEE:**
    **Roger Boughton, Jr.**

AMY, Judge.

The defendants appeal the issuance of a permanent injunction issued which, in part, ordered them to refrain from hunting on property leased by the plaintiff hunting club. For the following reasons, we affirm.

**Factual and Procedural Background**

The plaintiff, Buckskin Hunting Club, holds several hunting leases on approximately 14,000 acres on various pieces of property in the Atchafalaya Basin. In December 2000, the plaintiff filed a Petition for Injunction, alleging that the defendants, Buddy Bayard, Carrol Bayard, Oswald Buteaux, Ossie J. Romero, Jr., Roger Boughton, Jr., Kurt Boudreax, and Cory Bourque, had repeatedly entered the leased property without permission. The petition sought a temporary restraining order and, ultimately, an injunction prohibiting the defendants from entering the leased property. The petition alleged that the "defendants, have entered the leased premises in the past and, despite warnings, have indicated that they intend to continue to do so in the future."

The requested temporary restraining order was entered by the trial court, prohibiting the defendants from entering the leased premises. The defendants answered the petition, setting forth several affirmative defenses, including an assertion that "a portion of the land allegedly leased is on navigable streams." The defendants filed a reconventional demand, seeking damages associated with the wrongful issuance of a temporary restraining order or preliminary injunction. Although the trial court set a hearing on a rule to show cause why a preliminary injunction should not be ordered on the petition for injunction, the hearing was refixed by agreement of the parties several times. All orders previously rendered by the trial court were ordered to remain in effect during this time.

In December 2001, the plaintiff filed a Rule for Contempt of Court, asserting that the defendants violated the temporary restraining order by trespassing on the property, in particular, hunting with dogs. A hearing was held on the matter at which the defendants failed to appear. The trial court found in favor of the plaintiff. The defendants sought a new trial on the matter. Subsequently, the plaintiff filed an additional rule for contempt asserting ongoing violations of the temporary restraining order.

The merits of the original Petition for Injunction, the defendants' Motion for New Trial, and the plaintiff's rule for contempt were heard by the trial court over the course of several hearing dates. The trial court also considered an exception of no right of action filed by the defendants, alleging that the plaintiff failed to demonstrate that it complied with La.R.S. 9:1051. The trial court issued written reasons for ruling in January 2003. The trial court granted the defendants' request for a new trial, finding that the defendants received inadequate notice of the original contempt hearing. Furthermore, with regard to the remaining contempt issue, the trial court found in favor of the defendants.[1] The exception of no right of action was denied,

---

[1] In denying the request for contempt of court, the trial court reasoned, in part:

> The Court in this case cannot find that the Defendants, intentionally, knowingly and purposefully disobeyed the Temporary Restraining Order by allowing their dogs to roam or chase deer on the Buckskin lease. The Temporary Restraining Order did not specifically address the issue of dogs on the leased property. With the acknowledged tradition of deer dogs roaming free in the Atchafalaya Basin during hunting season, the Court does [] not find that Defendants continuing with this tradition constituted a knowing and intentional violation. Moreover, the presence of one or more of the Defendants in a duck blind which Buckskin claims to be within its lease and the Defendants claim to be on Segura property, and which neither of the State employees could give convincing evidence of the location of the duck blind, does not convince the Court that the Defendants knowingly and intentionally violated the Restraining Order. Therefore, the Court finds the Defendants not to be in contempt of court.

with the trial court concluding that La.R.S. 9:1051 was inapplicable to the acquisition of leases by the organization.

With regard to the merits of the case, the trial court found in favor of the plaintiff, granting the permanent injunction. The trial court considered several issues inherent in the request for injunction, concluding that banks along navigable rivers within the leased premises are not subject to public use for all purposes; that man-made pipeline canals within the leased premises are private property and that the lessees, through contractual obligation, are required to prevent trespassers from entering the canal; and finally, that any preliminary injunction issued would apply to the hunting dogs entering the property without the permission of the plaintiff. Finally, the trial court found that irreparable injury would result without the issuance of the permanent injunction.[2]

The defendants appeal, assigning the following as error:

I.    The trial court erred in finding that the plaintiff/appellant, BUCKSKIN HUNTING CLUB, an unincorporated association, had the legal capacity to assert the causes of action because of the limitations provided by La.R.S. 9:1051.

---

[2]    The judgment provides, in part:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that a permanent injunction be and is hereby issued, prohibiting Defendants, BUDDY BAYARD, CARROL BAYARD, OSWALD BUTEAUX, OSSIE J. ROMERO, JR., ROGER BOUGHTON, JR., KURT BOUDREAUX and CORY BOURQUE from:

(1) hunting in the private man-made canals, or on or along the banks of navigable rivers, bayous or streams, or in or upon any of the private land situated within the boundaries of the property leased to the Buckskin Hunting Club, which is more fully identified in "Exhibit A" hereto, even if such lands are periodically inundated by water, to include the shooting of deer or other wildlife on such private lands - including the banks of navigable rivers, bayous, streams and canals - from boats in the waters of such rivers, bayous, streams and canals; and

(2) allowing dogs owned, used or in any way under the custody and control of said Defendants or any one of them, to enter upon the leased property of the Buckskin Hunting Club to hunt or chase deer or other wildlife or for any other purpose.

II.  The trial court erred in finding that the man-made, navigable waterways located on private land are owned and exclusively controlled by the landowner therefore giving the landowner or other interest holder the right to restrict access to the waterways.

III.  The trial court erred in issuing a permanent injunction, prohibiting the defendants/appellants from going on the banks of navigable waterways or in the man-made canals at issue.

## Discussion

*No Right of Action*

The defendants filed a no right of action, alleging that the plaintiff lacked capacity to bring the present action against the defendants. They contend this lack of capacity is due to the plaintiff's failure to demonstrate that it was in compliance with La.R.S. 9:1051. In the event this court finds merit in the exception, the defendants seek damages for wrongful issuance of a temporary restraining order or preliminary injunction pursuant to La.Code Civ.P. art. 3608.[3]

La.R.S. 9:1051, entitled "Unauthorized corporations; unincorporated nonprofit associations; powers and liabilities," provides:

> A.  Corporations unauthorized by law or by an act of the legislature enjoy no public character, although these corporations may acquire and possess estates and have common interests as well as other private societies.
>
> Unless otherwise provided by its constitution, charter, bylaws, rules, or regulations under which it is organized, governed, and exists, any unincorporated nonprofit association may alienate or encumber title to immovable property to any person. For the purposes of this article, immovable property includes, without limitation, mineral rights, predial servitudes, and predial leases, and a transaction to alienate or encumber

---

[3]La.Code Civ.P. art. 3608 provides, in part:

The court may allow damages for the wrongful issuance of a temporary restraining order or preliminary injunction on a motion to dissolve or in a reconventional demand. Attorney's fees for the services rendered in connection with the dissolution of the restraining order or preliminary injunction may be included as an element of damages whether the restraining order or preliminary injunction is dissolved on motion or after trial on the merits.

4

shall include, without limitation, transactions to mortgage, hypothecate, donate, or transfer title to immovable property. Any such transaction shall be authorized by resolution adopted by a majority of the members of the association who vote on the resolution at a special meeting called and held for that purpose. The resolution may designate a person or persons to act as agent for the purpose of effectuating the transaction. Notice of the special meeting, including the date, time, and place of the meeting and the substance of the contemplated resolution, shall be published, on two separate days at least fifteen days prior to the date of the meeting, in the official journal of the parish in which a majority of the members reside or, if none, in a newspaper of general circulation in the parish. A copy of the resolution and proof of publication as required herein shall be attached to each act effectuating the transaction.

B. The provisions of this article applicable to transfers of immovable property by unincorporated nonprofit associations shall not apply when the transfers are part of an incorporation of the association in which substantially all of the assets of the unincorporated nonprofit association are transferred to the new corporation. In such cases, R.S. 12:1207(C) shall govern the transfer.

In ruling on the exception of no right of action, the trial court reviewed La.R.S. 9:1051 and concluded that: "[T]he statute is aimed at the divesting of some form of title to immovable property rather than acquiring an interest to immovable property such as leases. The Court finds that this provision is not applicable to the acquisition by Buckskin of leases of the character sued upon where Buckskin is acting as Lessee rather than Lessor."[4]

---

[4]Also bearing on the issue of whether the plaintiff has a right of action, the trial court found:

By agreement of counsel certain of the Buckskin leases were introduced into evidence as being representative of all leases involved.

The Court has reviewed the sample leases which were introduced into evidence as well as the extract of all other leases held by Buckskin Hunting Club. The language from the sample lease provides:

4. LESSEE is given the exclusive right and privilege to hunt and fish on the leased premises except that LESSOR reserves the right for LESSOR and LESSOR'S family to hunt and fish on said premises. LESSEE shall have the right to permit others to hunt or fish as his guest provided that LESSEE is present. LESSEE shall post the land in accordance with all applicable state, parish, and local posting regulations and ordinances, and shall evict all trespassers from the leased premises.

. . . .

5. As a material consideration of this lease, LESSEE agrees that LESSEE shall patrol the premises and use LESSEE'S best efforts to keep trespassers

5

Our review of the plain wording of the statute indicates that the trial court correctly denied the exception of no right of action. La.R.S. 9:1051 specifically indicates that its requirements are in effect at the point the organization chooses to "alienate or encumber title to immovable property *to* any person." (Emphasis added). This reference anticipates a divesting of interest rather than the acquisition of an interest. This assignment lacks merit.

*Issuance of Permanent Injunction*

therefrom. In the event LESSEE constructs barriers to limit ingress and egress to the leased premises, LESSEE shall provide LESSOR with any keys or other instruments necessary to open such barriers. LESSEE shall notify LESSOR immediately of the existence of any trespassers upon the property.

Another sample lease provides:

. . . Lessor hereby leases and lets unto Lessee for the term hereinafter mentioned and only for the purpose of recreational deer hunting, and for no other purpose . . .

. . . .

Lessor, its successors and assigns, does not guarantee Lessee the possession of the property against trespassers or poachers; nor will Lessor be bound to undertake any proceedings or actions to maintain Lessee in possession of said property. It is understood however that Lessee shall have the right as Lessee, to proceed agains[t] trespassers and poachers and to eject them by all legal means, and to institute such action or actions in Lessee's name as will protect Lessee's possession, all such acts or actions, however, to be at the cost and expense of Lessee.

Yet another lease provides:

2)    In addition to the rental above stipulated, Lessee agrees to diligently patrol the premises and keep the same free of trespassers and poachers, and to promptly notify Lessor of any such on premises.

3)    Lessee will, during the term of this lease, use the property for private noncommercial hunting purposes only and for no other purposes whatsoever.

The remaining representative leases contain these exact provisions with regard to the object of the lease and the duty to keep the property free from trespassers and poachers.

There is no doubt but that the Lessee, in this case, Buckskin Hunting Club, has the right to bring an action to stop third parties from interfering with their rights to use the property for hunting. In addition, all of the leases in question confer upon Buckskin, the obligation to patrol the property and to keep it free from trespassers and poachers. To that extent, Buckskin, is entitled to a preliminary injunction if it proves the requisite trespass and irreparable harm keeping all third parties, such as the Defendants[], off of the leased property.

6

The majority of the defendants' arguments in brief address the merits of the trial court's ruling insofar as the court granted the permanent injunction.[5] The defendants do not appear to contend that the plaintiff failed to demonstrate its burden with regard to the permanent injunction. Rather, the defendants' arguments focus on the trial court's rejection of their affirmative defense of navigability. They assert that the ruling is in error insofar as it limits their access to the man-made "navigable" waterways located on the leased property. They contend that these waterways are subject to the ebb and flow of the tides, a fact in dispute, and should be treated as a navigable waterway subject to public use. In addressing this issue within their second assignment of error, the defendants make various arguments, including those related to whether the property at issue is navigable in law or fact and whether the privately constructed canals located on the property became subject to public use through the expenditure of public funds or their alleged diversion of waters from navigable

_____

[5]With regard to the issuance of an injunction, La.Code Civ.P. art. 3601 provides:

> An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law; provided, however, that no court shall have jurisdiction to issue, or cause to be issued, any temporary restraining order, preliminary inunction, or permanent injunction against any state department, board or agency, or any officer, administrator or head thereof, or any officer of the State of Louisiana in any suit involving the expenditure of public funds under any statute or law of this state to compel the expenditure of state funds when the director of such department, board or agency, or the governor shall certify that the expenditure of such funds would have the effect of creating a deficit in the funds of said agency or be in violation of the requirements placed upon the expenditure of such funds by the legislature.
>
> During the pendency of an action for an injunction the court may issue a temporary restraining order, a preliminary injunction, or both, except in cases where prohibited, in accordance with the provisions of this Chapter.
>
> Except as otherwise provide by law, an application for injunctive relief shall be by petition.

The manifest error standard of review is applicable in consideration on appeal of the issuance of a permanent injunction. *See Parish of Jefferson v. Lafreniere Park*, 98-146, 98-147 (La.App. 5 Cir. 7/28/98), 716 So.2d 472;

waterways.[6] Much of the defendants' argument relates to factual determinations made by the trial court.

We first turn to the Louisiana Civil Code, which provides a general framework for consideration of private and public things. For example, the Civil Code provides, in part:

**Art. 449.    Common things**
Common things may not be owned by anyone. They are such as the air and the high seas that may be freely used by everyone comfortably with the use for which nature has intended them.

**Art. 450.    Public things**
Public things are owned by the state or its political subdivisions in their capacity as public persons.
*Public things that belong to the state are such as running waters, the waters and bottoms of natural navigable water bodies, the territorial sea, and the seashore.*
Public things that may belong to political subdivisions of the state are such as streets and public squares.

(Emphasis added.)

**Art. 452.    Public things and common things subject to public use**
Public things and common things are subject to public use in accordance with applicable laws and regulations. Everyone has the right to fish in the rivers, ports, roadsteads, and harbors, and the right to land on the seashore, to fish, to shelter himself, to moor ships, to dry nets, and the like, provided that he does not cause injury to the property of adjoining owners.
The seashore within the limits of a municipality is subject to its police power, and the public use is governed by municipal ordinances and regulations.

**Art. 455.    Private things subject to public use**
Private things may be subject to public use in accordance with law or by dedication.

---

[6] In *Vaughn v. Vermilion Corp*, 444 U.S. 206, 100 S.Ct. 399 (1979), the United States Supreme Court indicated that, given proof, a privately constructed canal that diverts a naturally occurring navigable waterway may offer a defense under federal law to an attempt to obtain injunctive relief.

**Art. 456.    Banks of navigable rivers or streams**[7]
The banks of navigable rivers or streams are private things that are subject to public use.

The bank of a navigable river or stream is the land lying between the ordinary low and the ordinary high stage of the water. Nevertheless, when there is a levee in proximity to the water, established according to law, the levee shall form the bank.

While this case is argued to be about many things, the central question is whether the property at issue is subject to public use under these Civil Code articles. Insofar as this assignment is concerned, the crucial inquiry is Article 450 and whether, considering the jurisprudence, the property is a navigable water body of the State. We are mindful that navigability is not presumed. Rather, it is a burden to be carried by the party asserting navigability. *See Shell Oil Co. v. Pitman*, 476 So.2d 1031 (La.App. 3 Cir. 1985). *See also Kieff v. Louisiana Land and Exploration Co.*, 99-2947 (La.App. 4 Cir. 1/24/01), 779 So.2d 85.

At trial, the plaintiff presented evidence to the trial court of their leases, along with maps it considered illustrative of the lands on which the leases are held and those of adjoining landowners. The plaintiff, through testimony of various club members, testified as to various encounters with the defendants and their hunting dogs within the property they assert is subject to the leases. The trial court also heard from officials from the Louisiana State Land Office as to the Office's position as to portions of the leasehold property it contends are property of the State. While it is important to note that there are various areas of the property to which the State lays claim,

_____

[7]*See also* La.Civ.Code art. 665, which addresses legal public servitudes and provides:

Servitudes imposed for the public or common utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for the making and repairing of levees, roads and other public or common works.

All that relates to this kind of servitude is determined by laws or particular regulations.

neither those contested areas nor the merits of those contests are at issue in this case.

The alleged violations by the defendants have occurred elsewhere on the property.

The defendants also testified, personally, as to their history in the basin, their

knowledge of the changes in water level, and their contentions regarding the

navigability of the various waterways.

In ruling, the trial court recounted the testimony and considered the above Civil

Code dictates, along with related jurisprudence and scholarly writings, explaining:

### USE OF PRIVATE LANDS PERIODICALLY INUNDATED WITH WATER

Courts have held that the banks of navigable river are private things subject to public use, while swamp lands subject to overflow are private things. Cf. *State v. Barras*, 615 So.2d 285 (La.1993). The Court in *Barras* stated that the public has the traditional right to fish from boats in navigable waters of [the] state. Professor Yiannopoulos points out in his Louisiana Civil Law Treatise on Property that the banks of a navigable river are private things subject to public use, while swamp lands subject to overflow are private things. A.N. Yiannopoulos, W.R. Irby Professor of Law, Tulane University, Louisiana Civil Law Treatise, Vol. 2, Property, § 69 (3rd ed., West Publishing Company, St. Paul, Minnesota, 1991). In the *Barras* case, the Court held that the Defendants were guilty of trespassing when they refused to leave while crawfishing in the Atchafalaya Basin on property belonging to Williams, Inc.

In this case, it was acknowledged that the water levels in the Basin may cover land areas, from time to time, anywhere from six inches to twelve feet. This does not convert all of the land that becomes covered with water to "banks" which are subject to public use. See *Barras*, *supra*.

There is no issue in the Court's mind but that this privately leased land is not subject to use by the public merely because during some periods of the year it is flooded swampland. This Court recognizes the difference between the banks of a navigable river and the flood plains of a navigable river, in this case, the Atchafalaya River.

As to those banks which are along navigable rivers within the leased premises, the use of these banks are limited to navigation and not hunting.

## USE OF PRIVATE CANALS

The next issue within this discussion is the use of private canals located within the leased premises. Defendants argues[] that if a man-made canal system destroyed the navigability of surrounding natural waterways, this may constitute a defense to trespass by use of the private canal because the private canal becomes subject to public use. There was testimony from some of the defendants[] regarding the fact that previous navigable waterways were silted up for much of the year. They believed this was due to the construction of man-made canals in the vicinity; however, they also acknowledge that the Corps of Engineers began controlling the water level in the Basin. Further, Defendants did not present any expert testimony or specific factual bases to support this claim. While it is important that the Basin remain traversable so that individuals may get to their private land and the public may access State land, this does not allow the public to use privately owned canals at will and to hunt from within these privately owned canals.

Defendants argue[] that there was an expenditure of public funds for cleaning up the banks of some of the man-made canals after Hurricane Andrew. However, the Defendants did not present any evidence of the express or tacit agreement of the private landowners. The use of public funds does not convey greater rights than those contracted for by the parties. To hold otherwise would allow the taking of private ownership rights without the consent of the owner and without just compensation in violation of our State and United States constitutions. Without establishing consent of the private landowners, the state cannot unilaterally spend money on private waterways thereby converting them to public use without the agreement of the landowner and/or some exercise of imminent domain which would necessarily involve just compensation. See *Amigo Enterprises, Inc. v. Gonzales,* 581 So.2d 1082, (La.App. 4 Cir. 1991) Defendants established no such agreements.

Additionally, the fact that the canal is navigable in fact does not thereby render it public. In *National Audubon Society v. White,* 302 So.2d 660, 667 (La.App. 3rd Cir. 1974), writ denied, 305 So.2d 542 (La.1975), the court held that a privately owned canal, though navigable in fact, may not be subject to public use for the same reasons that a private road, though used by commercial traffic, may not be subject to public use.

The obligations arising from water being a public thing requires the owner through whose estate running waters pass to allow water to leave his estate through its natural channel and not to unduly diminish its flow; however, this does not mandate that landowner allow public access to waterway. LSA - C.C. arts. 450, 452, 658. *People For Open Waters, Inc. v. Estate of Gray*, 643 So.2d 415 (La.App. 3 Cir. 1994). Landowners and members of [the] general public have [the] right to use running water for their needs, if they have access to it, but neither

landowners nor members of general public have the right to cross private lands in order to avail themselves of running water, and such right may only be established by agreement, destination of owner, or prescription. No public rights to use of a canal located on private property arises from the fact that water flows through channel. Cf. *People For Open Waters, Inc.*, supra.

Defendants also contend that by virtue of the regulations of the Corps of Engineers, these man-made canals fall within the definition of navigable waters subject to public use. One of the tests Defendants[] argue, is whether the manmade canals constructed on private land is connected to a natural navigable waterway. They argue that in previous cases, the Court held that the Corps would have jurisdiction over such canals if they connected to a natural navigable waterway but if they were landlocked, the Corps would not have jurisdiction over it. The regulations cited by Defendants merely <u>allow</u> the Corps to seek to exercise regulatory control should it determine that in fact, the waterway is within its jurisdiction and regulatory powers. Additionally, this would be something that would be sought by the Corps, on a canal by canal basis. There is no such issue involved in this case and the Court will not venture afield to answer an issue which is not before it. The Defendants have no basis to assert the right of the Corps of Engineers to control or regulate the private waterways herein, especially in view of the fact that the Corps has not seen fit to do so.

In *Vaughn v. Vermilion Corporation*, 100 S.Ct. 399 ([ ] 1979), the court held that no general no right of use in the public to a private canal arises by reason of the authority over navigation conferred upon Congress by the Commerce Clause of the constitution.

The Court therefore finds that the man-made pipeline canals in question are privately owned and the Petitioners by virtue of the leases have not only a right but an obligation to keep trespassers off of the leased property, which necessarily includes the private canals.

Our review of the record reveals support for the trial court's appreciation of the testimony and application of those facts to the relevant law. The testimony is undisputed that, at various times of the year, the property in question may be traversable by the defendants and others in various size boats. This fact, however, does not make those waterways navigable as that term is used in the jurisprudence and La.Civ.Code art. 450. Reference to the Louisiana Supreme Court's discussion in *State v. Barras*, 615 So.2d 285 (La.1993), a criminal trespass case, is demonstrative of the

concept that the presence of water during a portion of the year does not, alone, qualify an area as a navigable waterway. *See also Cenac v. Public Access Water Rights Ass'n*, 02-2660, p. 10 (La. 6/27/03), 851 So.2d 1006, 1013, wherein the Louisiana Supreme Court recently stated: "Although [a] canal is navigable, this fact alone does not render it public." Neither do we conclude that the trial court was required to credit the defendants' testimony regarding their opinion as to the diversion of natural waterways through the construction of the privately owned canals. The credibility/weighting assessments of these lay statements were certainly permissible in light of the complexities of the geographical features at issue.

In short, our review of the entirety of the record, the applicable law, and each of the defendants' various arguments, indicates no manifest error in the trial court's determination that the defendants' affirmative defense of navigability was not demonstrated. This assignment lacks merit.

*Banks of Navigable Waterways*

In a somewhat brief assignment of error, the defendants contend in full that:

> Because the right to use the public waterways described herein has been granted to the public, and in this case, the defendants/appellees, they have the right to use the navigable waterways and to use the banks of the waterways as provided by Louisiana law. Therefore is [sic] this court agrees with the defendants/appellants then the injunctive relief should not have been granted.

While this is the assignment in full, it appears that the defendants are making argument relating to their prayer for relief, wherein they contend that this court should "reverse the decision of the trial court which found that the Defendants/appellants had no right to hunt on the banks of navigable waterways."

In ruling, the trial court determined that, while the public may enjoy the right to use the banks of a navigable river, pursuant to the dictates of the Civil Code, those

uses are limited to those incidental to navigation.[8]  We find no error in this determination.  As can be seen from the text of La.Civ.Code art. 456: "The banks of navigable rivers or streams are private things that are subject to public use." However, referencing language from the Louisiana Civil Code of 1870 and subsequent jurisprudence, the comments to Article 456 support the trial court's determination that the public use associated with a bank of a navigable river/stream is not without limit.  Comment (b) provides, in part:

> According to well-settled Louisiana jurisprudence, which continues to be relevant, the servitude of public use under this provision is not "for the use of the public at large for all purposes" but merely for purposes that are "incidental" to the navigable character of the steam and its enjoyment as an avenue of commerce.  See State v. Richardson, 140 La. 329, 72 So. 984 (1916); Lyons v. Hinckley, 12 La.Ann. 655 (1856); Chinn v. Petty, 163 So. 735 (La.App.2d Cir. 1935).

---

[8]With regard to this assignment, the trial court found:

USE OF LAND ADJACENT TO NAVIGABLE WATERWAYS

. . . .

Defendants contend that they could arguably be entitled to use all the land between the eastern and western guide levees of the Atchafalaya Basin and that they are entitled to use the banks of navigable rivers or streams pursuant to this statute. However, the nature of the use of the banks of navigable rivers and streams is not for use of the public at large for all purposes, but rather for purposes incidental to the navigable character of the stream and its enjoyment as an avenue of commerce. Although the banks can be used for temporary mooring, etc., it does not include the right to hunt banks of rivers.  The reason is historic and it goes back to the old days when the streams and rivers were a major source of commerce up and down the bayous and the rivers of this State, more so than it was on the highways, which were largely undeveloped in those days; and that it was necessary that the traffic on the navigable streams could have access to the banks for various reasons: in case of ship wreck, to dry nets, to rest from the waters, etc.  See _State v. Barras_, 602 So.2d 301, 304 (La.App. 3 Cir. 1992).  In _Edmiston v. Wood_, 566 So.2d 673 (La.App. 2 Cir. 1990), a case involving similarly situated lands and similar issues, the Defendants[], owner and lessor of lands which became inundated periodically from backwaters of the Mississippi, were allowed to post the property against trespassers and to prevent individuals from traversing their vessels over that property when neighboring navigable bodies of water overflow their natural bed and bottoms and covered the Defendants' land.  The Court determined that hunting and fishing the adjacent overflowed lands are not incidental to the navigable character of the stream and its enjoyment as an avenue of commerce.  The court further determined, as this Court does, that merely because a bank of a navigable stream overflows does not subject it to public use in accordance with La.Civil Code Art. 456.

*See also Edmiston v. Wood*, 566 So.2d 673 (La.App. 2 Cir. 1990); 2 YIANNOPOULOS CIVIL LAW TREATISE: PROPERTY § 85 (4th ed. 2001). In light of this support, we find no error in the trial court's determination to prohibit the defendants from hunting on the banks of those waterways found to be navigable.

## DECREE

For the foregoing reasons, the decision of the trial court is affirmed. All costs of this proceeding are assessed against the defendants, Buddy Bayard, Carrol Bayard, Kurt Boudreaux, Oswald Buteaux, Cory Bourque and Ossie Romero.

**AFFIRMED.**