871 So.2d 1258 (2004)
WALKER LANDS, INC. and Hollybrook Land Company, Inc., Plaintiff-Appellee,
v.
EAST CARROLL PARISH POLICE JURY and The State of Louisiana, Defendants-Appellants.
No. 38,376-CA.
Court of Appeal of Louisiana, Second Circuit.
April 14, 2004.
Rehearing Denied May 6, 2004.
*1260 Louisiana Department of Justice by Gary L. Keyser, Asst. Attorney General, for Appellant, State of Louisiana.
McGlinchey Stafford, PLLC by James C. Crigler, Jr., Constance Charles Willems, New Orleans, for Appellee, Walker Lands, Inc.
Paul Loy Hurd, Monroe, for Waterways Access Association.
Before BROWN, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
This appeal arises from a trial court judgment in favor of Plaintiff Walker Lands, Inc. ("Walker Lands") and against Defendant State of Louisiana ("State"). The State now appeals the judgment of the trial court. For the reasons stated herein, we affirm in part, reverse in part and remand.

FACTS
On June 10, 1996, Walker Lands filed suit seeking an injunction against the East Carroll Parish Police Jury to stop all public *1261 use of Gassoway Lake and a drainage ditch which runs into the lake, both in the vicinity of the Mississippi River. In its lawsuit, Walker Lands also sought a declaratory judgment from the trial court declaring that Walker Lands is the owner of Gassoway Lake and that the lake and the drainage ditch are not subject to any right of public use.[1] Subsequently, the East Carroll Parish Police Jury filed a third-party demand against the State alleging that the State was an indispensable party to the suit, since it had a duty to defend title and access to alleged public lands.[2]
The State answered this lawsuit claiming the ownership and/or servitude to the bed, bottoms and waters of Gassoway Lake and the drainage ditch;[3] and, therefore, Gassoway Lake and the drainage ditch were subject to public use. The State and Walker Lands also claimed ownership of land that the State labels as an island, that sits between the lake and the Mississippi River.
A trial over these matters was held in 1999 and 2001. The trial court received extensive evidence from both parties concerning the creation and ownership of Gassoway Lake. At trial, it was determined that Gassoway Lake did not exist in 1812,[4] the year Louisiana was admitted into the Union. The land where Gassoway Lake now sits was either woods or farmland in 1812, west of the Mississippi River. When the Mississippi River shifted westward before approximately 1880, it flowed over this dry land. When the Mississippi River shifted eastward, private riparian landowners acquired the land, which includes Gassoway Lake and the drainage ditch, and have owned it ever since, with Walker Lands having purchased the land in 1974. Since 1960, all owners of the land and Gassoway Lake have prohibited access to it.
Dr. Richard Kesel, expert for Walker Lands, testified that, based on map evidence, data concerning the course and flow of the Mississippi River and other information, Gassoway Lake was in existence by 1894. During the 1860s and 1870s, the Mississippi River began moving in a westward direction toward the geographical site now occupied by Gassoway Lake. Dr. Kesel opined that the land was created through alluvion or accretion when the Mississippi River moved slowly and imperceptibly back eastward, leaving behind dry land and what is now Gassoway Lake in a shallow swale.[5] Gassoway Lake is a *1262 very shallow lake and its depth has not changed since its formation. Currently, the channel of the Mississippi River is approximately three and a half miles east of Gassoway Lake. Gassoway Lake remains landlocked during most of the year and is practically inaccessible by boat.[6] The lake only receives water when the Mississippi River floods, which causes water to run through the ditch and eventually spilling over into the lake. The drainage ditch runs from the southern end of Gassoway Lake to Bunch's Cutoff, another body of water. At low water, which is at 77 feet, the ditch is mostly dry and the land that sits between the lake and the Mississippi River is mostly dry. A levee on the land blocks the Mississippi River from flooding any more dry land west of Gassoway Lake. At times when the Mississippi River floods, the land owned by Walker Lands, including Gassoway Lake, is submerged under the waters of the Mississippi River, below the ordinary high water mark, which is 112 feet, all the way to the base of the levee. When the Mississippi River is not at an elevated state, however, the land and Gassoway Lake remains well above the ordinary low water mark of the Mississippi River.[7]
The trial court found that, according to the 1894 map, Gassoway Lake was formed as a shallow swale. In making such a finding, the trial court rejected the conclusion found in a Louisiana Attorney General Opinion[8] that Gassoway Lake was created as a result of a neck cut-off; the testimony of the State's expert, Dr. Paul Kemp, who opined that Gassoway Lake was created as a result of chute cut-off, as described in La. C.C. art. 503,[9] within the alluvial plain; and that the lake was formed out of the former Mississippi River bed. Dr. Kemp testified that the area where Gassoway Lake is located was the main channel of the Mississippi River in 1881 and that, when the Mississippi River moved eastward, it left alluvion deposits against the west bank of the river, with Gassoway Lake as a feature within the alluvion build up, which cut it off from the Mississippi River, but that it remained a channel for the Mississippi River.
The trial court ultimately rendered judgment in favor of Walker Lands, concluding that Gassoway Lake and the drainage ditch are privately owned by Walker Lands because the lake and ditch are not navigable in fact; and, thus, not navigable in law. In addition, the trial court determined that certain land between Gassoway Lake and the Mississippi River was not an island and was owned by Walker Lands.[10] Further, the trial court found that the State has never claimed this land in the *1263 past and cannot now do so. Thereafter, the trial court entered a permanent injunction enjoining the State or the general public-at-large from going on or about Gassoway Lake, the land between Gassoway Lake and the Mississippi River and the drainage ditch which runs into the lake. The State now appeals the judgment of the trial court, raising the following assignments of error[11] (verbatim):
1. The trial court erred in its adoption of the final judgment written by Walker which prohibits public navigation on waters of the Mississippi and awards Island No. 1, formed in the Mississippi, to Walker;
2. The trial court erred in disregarding all relevant and competent evidence and in rendering a judgment contrary to the law of Louisiana and long standing public policy;
3. The trial court erred in refusing to grant the State a suspensive appeal where all procedures were followed, and the trial court simply nullified the request without consent of the parties and a hearing; and
4. The trial court erred in maintaining a TRO in effect from 1996 to present, despite the reversal of a prior judgment by the Court of Appeal, Second Circuit and remand to the trial court for a full trial.

DISCUSSION
It is well settled that a court of appeal should not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State through Dept. of Transp. & Development, 617 So.2d 880 (La.1993). The reviewing court must do more than just simply review the record for some evidence which supports or controverts the trial court's findings; it must, instead, review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Id. The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Cosse v. Allen-Bradley Co., 601 So.2d 1349 (La. 1992). If the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Housley v. Cerise, 579 So.2d 973 (La.1991) (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990)).
The State asserts that the evidence at trial showed that Gassoway Lake was created out of the former bed of the Mississippi River, it remains navigable and connected to the Mississippi River as a channel and is public water under the law. Further, the State contends that, when Gassoway Lake is below the ordinary high water of the Mississippi River, it is burdened by a navigation servitude, levee servitude and the public use. The State also charges that the trial court's judgment is overly broad.

Creation of Gassoway Lake
The central issue involved in this case is the creation of Gassoway Lake and the effect of the movement of the Mississippi River. La. C.C. art. 499 provides:
Accretion formed successively and imperceptibly on the bank of a river or stream, whether navigable or not, is called alluvion. The alluvion[12] belongs *1264 to the owner of the bank, who is bound to leave public that portion of the bank which is required for public use.
The same rule applies to dereliction formed by water receding imperceptibly from a bank of a river or stream. The owner of the land situated at the edge of the bank left dry owns the dereliction.
Any alluvion and/or dereliction which forms along the banks of a river belongs to the riparian landowners, who own the land adjacent to the river, when the river shifts course. Nevels v. State, 95-0100 (La.App. 1st Cir.11/9/95), 665 So.2d 26; Davis Oil Company v. Citrus Land Company, 576 So.2d 495 (La.1991). Moreover, La. C.C. art. 504 provides:
When a navigable river or stream abandons its bed and opens a new one, the owners of the land on which the new bed is located shall take by way of indemnification the abandoned bed, each in proportion to the quantity of land that he lost.
If the river returns to the old bed, each shall take his former land.
At trial, it was established that Walker Lands' predecessors-in-title were the riparian landowners of the property that sat at the bank of the Mississippi River when it changed course sometime after 1880 and began shifting back eastward, leaving behind dry land and standing water in a shallow swale in the land, what is now Gassoway Lake. Walker Lands' predecessors-in-title began to acquire, through alluvion,[13] new land that was created, when the Mississippi River shifted east. Dr. Kesel explained that Gassoway Lake was part of this creation of new land as the Mississippi River shifted eastward.
Gassoway Lake and surrounding lands between the lake and the river are sometimes flooded by the Mississippi River. Privately owned land does not become part of a navigable body of water when a nearby navigable body of water overflows its normal bed and temporarily covers the property. Edmiston v. Wood, 566 So.2d 673 (La.App. 2d Cir.1990); Buckskin Hunting Club v. Bayard, 03-1428 (La.App. 3d Cir.3/3/04), 868 So.2d 266. Gassoway Lake is landlocked and does not now lie in the bed of the Mississippi River, which is some three and one-half miles to the east; likewise, it is not a channel of the river, since it is cut off from it. Further, since Gassoway Lake is not a channel of the Mississippi River, the dry land between it and the Mississippi River is not an island, as claimed by the State. When the land that is now Gassoway Lake sat in the bed of the Mississippi River, the river bed was owned by the State as the bed of the Mississippi River and not as the bed of a separate navigable lake. The land and the lake, however, no longer sit in the bed of the Mississippi River.
We find that the land surrounding Gassoway Lake was formed through accretion/alluvion *1265 as the Mississippi River shifted course. Gassoway Lake formed due to water left behind in a swale in the land when the river shifted eastward. We note that the depth of the lake has not changed since its formation. This evidence supports the conclusion that the lake was formed in a swale and not through a chute or neck cut-off. Applying La. C.C. art. 499 to the facts in the instant case, we further find that, as owners of the bank of the Mississippi River, Walker Lands' predecessors-in-title gained ownership of not only the newly formed dry land, but also the lake itself. The trial court heard the testimony of both Dr. Kesel and Dr. Kemp and found Dr. Kesel's theory of the shift in the Mississippi River and creation of Gassoway Lake to be more credible. After reviewing the evidence in its entirety, we find that the trial court's conclusion was a reasonable one. The trial court did not commit manifest error, nor was it clearly wrong in determining the manner in which Gassoway Lake was created.

Navigability and Ownership of Gassoway Lake
First, we note that the State cannot claim ownership of Gassoway Lake by basing its argument on La. R.S. 9:1101, as it asserts in its brief. La. R.S. 9:1101 provides, in pertinent part, that "The waters of all bayous, rivers, streams, lagoons, lakes and bays and the beds thereof, not under the direct ownership of any persons on August 12, 1910, are declared to be the property of the state." Walker Lands proved at trial that its predecessors-in-title owned the land encompassing Gassoway Lake on August 12, 1910. We find no merit in the State's argument in this regard. We also find no merit in the argument that the State owns Gassoway Lake because the State owns all bodies of water that were within its territory when it was admitted into the Union in 1812. Gassoway Lake did not exist in 1812; and, consequently, this law would not apply.
Since the State only owns navigable bodies of water, it argues that Gassoway Lake and the drainage ditch are navigable. "Non-navigable lakes are private things. Accordingly, they may belong to... a private person." La. C.C. art. 506 cmt. c. A body of water is navigable in law if it is navigable in fact. Ramsey River Road Property Owners Association, Inc. v. Reeves, 396 So.2d 873 (La.1981). A body of water is navigable in fact if it is capable of being used for a commercial purpose over which trade and travel are or may be conducted in the customary modes of trade and travel. Id.
Non-navigable lakes are subject to the law governing dry lands. See La. C.C. art. 506 cmt. d. La. R.S. 9:1115.2 provides:
A. Inland non-navigable water bodies are those which are not navigable in fact and are not sea, arms of the sea, or seashore.
B. Inland non-navigable water beds or bottoms are private things and may be owned by private persons or by the state and its political subdivisions in their capacity as private persons.
Whether or not Gassoway Lake and the drainage ditch are navigable as they normally sit when they are not flooded by the Mississippi River depends on whether they are used in commerce. The trial court found that Gassoway Lake and the drainage ditch were not navigable and we find no manifest error in that conclusion. At trial, the State attempted to prove that Gassoway Lake and the drainage ditch can be used for commercial purposes. The trial judge properly rejected this argument.
*1266 A body of water not connected to a navigable body of water and surrounded by land can serve no useful commercial purpose. Fitzsimmons v. Cassity, 172 So. 824 (La.App. 2d Cir.1937). In Fitzsimmons, a shift in the Red River caused a shallow body of water to be left behind. This body of water had no connection with the Red River. The court found that the body of water "partakes more of a character of a shallow lake than it does a navigable stream" and it was owned by the private landowner and not the State.
In the case sub judice, the State argued that the rental of boats for fishing and other recreational purposes on Gassoway Lake was enough to find that the lake was being used for a commercial purpose to support navigability. Further, the State argued that the drainage ditch was navigable in fact. Recreational use of a body of water alone is not enough to say that the body of water is being used for a commercial purpose. Gassoway Lake is a non-navigable body of water that is owned by a private entity. It is a private thing. Moreover, the evidence in the record supports the conclusion that the drainage ditch remains completely dry for most of the year, making it unusable. The drainage ditch also cannot be used for a commercial purpose and it is a private thing. The trial court did not commit manifest error and was not clearly wrong in finding that Gassoway Lake and the drainage ditch are not navigable bodies of water. Along with the land at issue before the trial court, Gassoway Lake and the drainage ditch are owned by Walker Lands and not the State.

Injunction
First, the State argues that the judgment is overly broad because it enjoins use of the Mississippi River. We do not agree. We have reviewed the specific language of the injunction and find that it does not enjoin use of the Mississippi River, which is obviously a public body of water and no one can prevent boaters from navigating it; however, the permanent injunction must fail on other grounds.
Although the issue of standing has not been raised on appeal, we must consider this issue since it is fundamental to the granting of relief, such as the issuance of an injunction. Louisiana Dept. of Agriculture and Forestry v. Louisiana State Licensing Board for Contractors, 36,694 (La.App.2d Cir.1/29/03), 837 So.2d 726. Justiciable controversy has been defined as:
"[a]n actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relation of the parties who have real adverse interests, and upon which the judgment of the court may effectively operate through a decree of conclusive character. Further, the plaintiff should have a legally protectable and tangible interest at stake, and the dispute presented should be of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Atchafalaya Basin Levee District v. Pecquet, 364 So.2d 610 (La. App. 1st Cir.1978).
A justiciable controversy is shown if there is a genuine controversy between a plaintiff and a defendant as to legal rights requiring a judicial determination. Louisiana Dept. of Agriculture and Forestry, supra.
In addition, under La. C.C.P. art. 3611, enforcement of an injunction is punishable as a "contempt of court." Such a contempt judgment, however, may only be obtained against the party/defendant against whom the action for injunction was brought.
*1267 In the case sub judice, Walker Lands and the State were the only parties involved in this lawsuit at trial and no other persons or private entities were involved; however, the trial judge issued a permanent injunction against not only the State's use of the property, but also the public's-at-large use of the property. The trial judge ordered, adjudged and decreed, in pertinent part, that:
[T]he State of Louisiana, and its subdivisions or agencies, and any employee, juror, or agent thereof, and all other persons, including members of the public, (all these persons collectively "Persons"), be and are hereby permanently enjoined from entering upon the Property..., which Property includes all lands... and the bed, bottoms and waters of Gassoway Lake ... whether or not any of the lands or water bodies on the Property are inundated by flood waters from the Mississippi River or any other water body, for any purpose whatsoever,....
All said Persons are further permanently enjoined from a) engaging in any conduct or activity which directly or indirectly encourages or permits other Persons, including members of the general public, to enter upon the Property described above, without Walker's or its successors-in-title express prior authorization; and b) from using such Property or authorizing, causing or encouraging anyone, other than Walker or its successors-in-title and their agents, invitees and licensees from using the Property, including the bed, bottoms and waters of Gassoway lake and the water body, (whether called a ditch, bayou, or outlet channel or otherwise) ... for any purpose whatsoever,....
All said Persons are further permanently enjoined from using any portion of the Property, including the lands and any bed, bottoms and waters of any water bodies thereon, for any purpose whatsoever, unless they have express prior authorization of Walker or its successors-in-title.
Walker Lands cannot be given relief against a hypothetical public-at-large. It cannot have an injunction enforced against every individual person in the state when there is no actual dispute against every individual person in the state. There is no genuine controversy between Walker Lands and every person in the State of Louisiana. After thorough research, we found no law or jurisprudence in this State that supports the conclusion that an entire hypothetical public-at-large can be enjoined by a court from doing an act.
Further, we find that there is no direct evidence in the record of any direct violation by State officials or departments of the State attempting to invade Walker Lands' property; and, therefore, there is no justiciable controversy between Walker Lands and the State that would warrant an injunction being issued against the State. Simply put, there is no genuine controversy between Walker Lands and the State over the issue of injunctive relief. Walker Lands does, however, have a right to prevent its private property from being exploited. It has the same rights as all other owners of private property against a person or entity who invades its land and that is to enforce its rights as a private landowner through use of the trespass statutes, to seek specific damages against a person or entity or to ask for an injunction against a specific person or entity, but only at the time that the person or entity invades its land.[14] Owners of private property *1268 may forbid entry to anyone for purposes of hunting or fishing and the like. La. C.C. art. 3413. We hereby reverse the permanent injunction issued by the trial court.

Public Use Servitude
Finally, in support of its argument for ownership, the State raised the issue of the existence of legal public servitudes under La. C.C. art. 665[15] in favor of itself and the general public for the utility of the Mississippi River banks at times of high water and for levee maintenance purposes. The Civil Code's definition of the bank of a navigable river is the land lying between the ordinary low and the ordinal high stage of the water. See La. C.C. art. 456. The State, however, has not presented a justiciable controversy in this case showing that the State, through its agents in its propriety capacity, seeks to utilize any rights to these public servitudes. We likewise, therefore, pretermit discussion of the available use of these legal public servitudes during times of high water.[16]

Devolutive Appeal and Temporary Restraining Order
The State also argues that the trial judge unilaterally converted its motion for a suspensive appeal into a devolutive appeal. Further, the State asserts that the temporary restraining order (TRO) put into effect by the trial judge in the first decision in this case, which was later reversed by this court, should not have stayed in effect after the reversal.
First, we will address the devolutive appeal. A trial judge has discretion to issue a devolutive appeal. See La. C.C.P. art. 3612. In the instant case, the State requested a suspensive appeal, or in the alternative, a devolutive appeal. When the State submitted a draft order for the trial judge to sign, however, it mentioned only a suspensive appeal in the draft order. The trial judge marked out the word suspensive and wrote in devolutive, using the discretion allowed to him under our code of civil procedure. We find no merit to the State's third assignment of error.
Finally, the State claims that the TRO should not have remained in effect after the original decision was reversed by our court. In reviewing the record, we found that the parties had agreed to maintain the TRO until the trial court rendered a decision over the merits of the permanent injunction. Likewise, we find no merit in the State's final assignment of error.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed as to the ruling that Gassoway Lake and its surrounding *1269 lands are owned by Walker Lands. The judgment of the trial court is reversed as to the permanent injunction. Costs of this appeal shall be divided equally between the parties. The total cost of this appeal was $167.50, of which half shall be assessed against the State of Louisiana through the Department of Justice, pursuant to La. R.S. 13:5112. The matter is remanded to the trial court for the calculation of trial court costs to be assessed equally against the parties.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
*1270 
*1271 APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, CARAWAY, PEATROSS, and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] This lawsuit has previously been before this court. See Walker Lands, Inc. v. East Carroll Parish Police Jury, 31,490, 738 So.2d 205 (La.App.2d Cir.3/5/99), unpublished opinion, writ denied, 99-1181 (La.6/4/99), 744 So.2d 631. The previous decision in this case was our court's reversal of summary judgment which had been granted by the trial court for Walker Lands in determining ownership of Gassoway Lake.
[2] The East Carroll Parish Police Jury was later dropped from the suit. Hollybrook Land Co., Inc. was also an original party to this suit, but was later dismissed as well.
[3] Walker Lands refers to the gully that provides water to Gassoway Lake in times of high water as a drainage ditch. The State refers to the gully as an outlet channel. The pictures of the gully in the record indicate that a more accurate term for it is a drainage ditch; therefore, this term will be used herein.
[4] By law, the State owns all bodies of water that were in existence within its borders in 1812. See Texas v. Louisiana, 410 U.S. 702, 93 S.Ct. 1215, 35 L.Ed.2d 646 (1973); Gulf Oil Corp. v. State Mineral Board, 317 So.2d 576 (La.1974).
[5] A swale is a valley or low place; a tract of low and usually wet land. Webster's Revised Unabridged Dictionary (1913). A swale is a long, narrow, shallow, natural depression in the land.
[6] The western portion of Gassoway Lake is bounded by the main levee for the Mississippi River.
[7] This is an important fact and detrimental to the State's case, because, with respect to rivers and streams, the bed or bottoms of water which the State owns in her sovereign capacity is only the land covered by the water up to its ordinary low water stage. See State v. Cockrell, 162 So.2d 361 (La.App. 1st Cir. 1964), writ refused, 246 La. 343, 164 So.2d 350 (1964); Esso Standard Oil Company v. Jones, 233 La. 915, 98 So.2d 236 (1957). In this case, if the State argues that the land and Gassoway Lake are within the bed of the Mississippi River, then its argument that it owns Gassoway Lake must fail because it is above the ordinary low water mark.
[8] See La. Atty. Gen. Op. No. 96-206.
[9] La. C.C. art. 503 provides:

When a river or stream, whether navigable or not, opens a new channel and surrounds riparian land making it an island, the ownership of that land is not affected.
[10] Please see the attached map of the property at issue in the appendix at the end of this opinion. This map was entered into evidence at the trial court as Plaintiff's Exhibit 47.
[11] The State makes more specific arguments in its brief.
[12] Alluvion may be defined as an addition to riparian land, gradual and imperceptible, made by the water to which the land is contiguous. The test as to what is gradual and imperceptible in the sense of the rule is that, though the witnesses may see from time to time that progress has been made, they could not perceive it while the process was going on. Whether it is the effect of natural or artificial causes makes no difference. The result as to the ownership in either case is the same. Esso Standard Oil Company, supra.
[13] Alluvion and accretion are terms used synonymously. Accretion is defined as the act of growing to a thing; usually applied to the gradual and imperceptible accumulation of land by natural causes, as out of the sea or river. Black's Law Dictionary 20 (6th ed.1990). Accretion is the addition of portions of soil, by gradual deposition through the operation of natural causes, to that already in possession of owner. The term alluvion is applied to the deposit itself, while accretion denotes the act.
[14] For example, see Cenac v. Public Access Water Rights Association, 02-2660 (La.6/27/03), 851 So.2d 1006; Buckskin Hunting Club, supra.
[15] La. C.C. art. 665 provides:

Servitudes imposed for the public or common utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for the making and repairing of levees, roads and other public or common works.
All that relates to this kind of servitude is determined by laws or particular regulations.
[16] We do note that the jurisprudence in our state has long held that the public use servitude means that the public may use the bank of a river only for a navigational purpose. See La. C.C. art. 456 cmt. b; Ward v. Board of Levee Com'rs of Orleans Levee District, 152 La. 158, 92 So. 769 (1922), cert. denied, 260 U.S. 745, 43 S.Ct. 246, 67 L.Ed. 492 (1923); Jefferson Parish v. Universal Fleeting Company, 234 So.2d 88 (La.App. 4th Cir.1970). Fishing and hunting on flooded lands do not meet the definition of using the bank of a river at its high water mark for a navigational purpose. See State v. Barras, 615 So.2d 285 (La.1993); Warner v. Clarke, 232 So.2d 99 (La.App. 2d Cir.1970), writ refused, 255 La. 918, 233 So.2d 565 (1970).