STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-520

HAROLD JULIEN

VERSUS

DYNAMIC INDUSTRIES, INC.

************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4
PARISH OF LAFAYETTE, NO. 08-06249
SHARON MORROW, WORKERS' COMPENSATION JUDGE

************

DAVID E. CHATELAIN[*]
JUDGE

************

Court composed of Marc T. Amy, Billy Howard Ezell, and David E. Chatelain, Judges.

**JUDGMENT AFFIRMED. ANSWER TO APPEAL DISMISSED.**

David K. Johnson
Johnson, Stiltner & Rahman
Post Office Box 98001
Baton Rouge, Louisiana 70898-8001
(225) 231-0755
Counsel for Defendants/Appellants:
    Dynamic Industries, Inc.
    Louisiana Workers' Compensation Corporation

Craig A. Davis
Attorney at Law
111 Mercury Street
Lafayette, Louisiana 70503
(337) 231-5351
Counsel for Plaintiff/Appellee:
    Harold Julien

---

[*]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**CHATELAIN, Judge.**

The defendants, Dynamic Industries, Inc. (Dynamic) and Louisiana Workers' Compensation Corporation (LWCC), appeal a judgment the workers' compensation judge (WCJ) rendered in favor of its employee, Harold Julien (Julien). Julien answers the appeal seeking additional attorney fees and costs for having to defend the appeal. For the following reasons, we affirm the ruling of the WCJ and dismiss Julien's answer to appeal as untimely.

## FACTS AND PROCEDURAL HISTORY

Julien worked as an equipment operator for Dynamic at its west yard at the Port of Iberia where Dynamic built offshore oil and gas platforms. Julien's primary duties entailed operating cranes and cherry pickers to transport equipment and material from the yard to the dock area to be loaded onto barges by the riggers.[1] Occasionally, however, if it was a slow day and there was nothing for him to move with his cherry picker, Julien's supervisor would ask him to "give the riggers a helping hand."

July 23, 2007 had been a slow day for the operators, and Julien's supervisor had asked him to help the riggers, who were short-handed that day, take a gangplank off of a barge so that the barge could be moved. The gangplank was too heavy to be manually moved. Julien's supervisor and three or four riggers were on the barge. Julien and a rigger were on the gangplank rigging it up to a cherry picker with shackles and chains when the gangplank came apart from the barge causing Julien and the rigger to fall "out of the air backwards" twelve to fifteen feet to the ground. They landed on top of a pipe used as a hand railing. Rocks and gravel covered the ground where they fell. An ambulance took Julien to the emergency room at

---

[1] According to the defendants' appellate brief, the riggers "were charged with the task of fixing the platform and its appurtenant equipment to the barges."

Dauterive Hospital for treatment. Later, Dynamic sent Julien to see Dr. Olga Reavill, its company doctor. Julien testified that on one particular occasion a company van had picked him up for an appointment with Dr. Reavill. On the way home from the appointment, Julien was told that he was being terminated for not returning to work.

Julien was initially represented by an attorney who filed an LS-203 "Claim for Compensation" with the U.S. Department of Labor on September 13, 2007, asserting a claim under the Longshore & Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-944 (the LHWCA or the Longshore Act). Thereafter, Julien discharged his original attorney and retained his current counsel of record. Believing that the LHWCA did not cover Julien's claim, current counsel filed a 1008 Disputed Claim for Compensation on July 10, 2008, seeking benefits pursuant to the Louisiana Workers' Compensation Act, La.R.S. 23:1021-1415 (the LWCA or the State Act) on Julien's behalf. The defendants responded to Julien's claim by filing a declinatory exception of lack of subject matter jurisdiction, contending that the Longshore Act covered the matter. In the meantime, Julien filed a motion to approve his request for Temporary Total Disability Benefits (TTDs). The defendants' exception and Julien's motion came for hearing before the WCJ on October 24, 2008.[2] By judgment dated December 16, 2008, the WCJ denied Julien's motion for TTDs and the defendants' declinatory exception. The judgment directed that "any benefits owed are to be paid under the State . . . Act and not the Longshore . . . Act." Thereafter, the defendants filed an answer and general denial; they sought neither supervisory nor appellate review of the denial of their exception of lack of subject matter jurisdiction.

---

[2]The record on appeal does not contain a transcript from the October 24, 2008 hearing, and we are unaware that any such transcript exists.

The matter was tried on October 14, 2009. The only witnesses to testify were Julien and his wife. Following the presentation of testimony, exhibits, and arguments of counsel, the WCJ orally ruled as follows: (1) that medical treatment for a lumbar strain and cracked ribs be provided to Julien pursuant to the State Act; (2) that Julien's request for a diskogram is denied; (3) that TTDs be reinstated back to the date Julien was terminated with interest on any past due amounts and that a dollar-for-dollar credit be allowed for any overpayments due to the prior TTD payments made pursuant to the Longshore Act; (4) that no penalties or attorney fees be awarded for the discontinuance of indemnity benefits; (5) that there be a $4,000.00 penalty and a $4,000.00 attorney fee assessed against the employer for failure to approve and/or timely reimburse Julien for prescription medications; (6) that Julien undergo a functional capacity evaluation (FCE) as soon as possible and that the insurer pay for all necessary medication for Julien's high blood pressure until the FCE is completed; (7) that Julien's counsel be awarded $321.81 for expenses incurred in obtaining certified medical records; and (8) that the insurer pay for the medical treatment outlined in Plaintiff's Exhibits 24, 25, and 26 pursuant to the Louisiana Fee Schedule. The WCJ signed a written judgment on October 30, 2009.

The defendants timely appealed and are now before this court asserting two errors. First, they contend that the WCJ erred in failing to find that Julien's claim fell within the jurisdiction of the Longshore Act. Next, they contend that the WCJ erred in awarding Julien compensation and medical benefits.[3]

_____

[3]The defendants also claimed that the WCJ erred in awarding Julien penalties and attorney fees; however, they failed to brief this issue. Uniform Rules—Courts of Appeal, Rule 2–12.4 provides that "[a]ll specifications or assignments of error must be briefed" and that the "court may consider as abandoned any specification or assignment of error which has not been briefed." We find that the defendants' failure to advance any argument regarding the propriety of the WCJ's award of penalties and attorney fees to Julien constitutes an abandonment of the issue. *See Charles v. Landry*, 09-1161 (La.App. 3 Cir. 3/10/10), 32 So.3d 1164.

3

**DISCUSSION**

This court discussed the standard of review to be employed in workers' compensation cases in *Foster v. Rabalais Masonry, Inc.*, 01-1394, pp. 2-3 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied,* 02-1164 (La. 6/14/02), 818 So.2d 784:

> Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dep't of Corrections,* 93-1305 (La. 2/28/94); 633 So.2d 129. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State,* 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Id.* Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1112 (La.1990).

"The determination of coverage is a subjective one in that each case must be decided from all of its particular facts." *Jackson v. Am. Ins. Co.*, 404 So.2d 218, 220 (La.1981). This court has held that, in light of that standard of review, "great deference is accorded to the [workers' compensation judge's] factual findings and reasonable evaluations of credibility." *Cent. Lumber Co. v. Duhon*, 03-620, p. 3 (La.App. 3 Cir. 11/12/03), 860 So.2d 591, 593, *writ denied*, 04-315 (La. 4/2/04), 869 So.2d 880 (quoting *Garner v. Sheats & Frazier*, 95-39, p. 7 (La.App. 3 Cir. 7/5/95), 663 So.2d 57, 61).

Initially we note that the defendants do not challenge the allegation that Julien suffered a work-related injury. Instead, the defendants focus their argument primarily on whether Julien's claim falls within the jurisdiction of the State Act or the

Longshore Act and urge us to reverse the WCJ's determination that it had subject matter jurisdiction over this matter.

### *The State Act versus The Longshore Act*

The defendants contend that the "situs" requirement for coverage under the Longshore Act has been satisfied in this case because Julien admitted that his accident occurred at the Port of Iberia and because there is "no doubt that the Port of Iberia is [a] dock or an adjoining area customarily used by an employer (herein Dynamic Industries) in loading or unloading vessels and which is located upon the navigable waters of the United States." The defendants offer no jurisprudential support for their conclusory allegation that Julien's injury occurred upon the navigable waters of the United States.

With respect to the "status" requirement, the defendants contend that because the evidence showed that Julien played a "significant and regular role in the loading/unloading operations" of Dynamic, the trial court erred in concluding that Julien was not covered under the Longshore Act. In support of their argument, the defendants refer this court to three decisions published in the *Benefits Review Board Service Longshore Reporter*.[4]

Julien counters that "there is not a scintilla of evidence in the record to prove that there were navigable waters anywhere near [him] at the time of the [a]ccident" or that Dynamic is in the business of loading, unloading, repairing, dismantling, or building vessels. To the contrary, Julien submits that the entirety of the evidence as to the nature of Dynamic's business operations came from trial exhibits which

---

[4]*See Vega v. Mobil Mining and Minerals*, 33 BRBS 319 (ALJ)(1999); *Washington v. McDermott, Inc.*, 32 BRBS 418 (ALJ)(1998); and *Hovell v. Waterman Steamship Corp.*, 30 BRBS 255 (ALJ)(1996).

showed that Dynamic builds platforms for oil and gas companies. Moreover, Julien submits that the simple fact that he worked at a facility located entirely within the Port of Iberia, which he describes as "a huge area, comprising many different employers," does not prove that he was working on navigable waters or on any area customarily used by Dynamic for loading, unloading, repairing, dismantling, or building vessels. Nonetheless, Julien fails to offer any jurisprudential support for his claim that the "situs" requirement has not been met.

For the Longshore Act to cover an employee, the employee must meet the "status" and the "situs" requirements listed in the Longshore Act. *See Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 105 S.Ct. 1421 (1985). The "status" requirement is found in 33 U.S.C. §§ 902(3) and 902(4), which provide, in pertinent part:

> (3) The term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker. . . .
>
>    . . . .
>
> (4) The term "employer" means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel).

The "situs" requirement concerns the location where the employee's work is performed; it is found in 33 U.S.C. § 903(a), which is entitled "Disability or death; injuries occurring upon navigable waters of United States," and provides:

> Except as otherwise provided in this section, compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any

6

adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel).

In *Flowers v. Coastal Cargo Co., Inc.*, 01-656, pp. 3-4 (La.App. 4 Cir. 3/20/02), 815 So.2d 198, 200, *writ denied*, 02-923 (La. 5/31/02), 817 So.2d 100, the fourth circuit detailed the analysis employed in determining whether an injured employee's remedy falls under the State Act or the Longshore Act, noting:

> "Longshore Act coverage is to be determined solely on the basis on [sic] the provisions of the Longshore Act, and without reference to the availability which any such 'employees' may have to remedies outside that law." H.R. Rep. 98–570(I), p. 7, 1984 U.S.C.C.A.N. 2734, 2740. Therefore, it was proper for the Workers' Compensation Court to look to the LHWCA to make a determination regarding jurisdiction in this matter. . . .
>
> Pursuant to La. R.S. 23:1035.2 of the WCA, "no compensation shall be payable in respect to the disability or death of an employee covered by the Federal Employer's Liability Act, the Longshoremen's (sic) and Harbor Worker's (sic) Compensation Act, or any of its extensions, or the Jones Act."

The *Flowers* court upheld the WCJ's finding that jurisdiction over the injured worker's claim fell under the Longshore Act, noting that his "injury occurred while [he] was engaged in maritime activities." *Id.* Unfortunately, however, the opinion does not go into detail regarding the location where the employee was working, the work that the employee was engaged in, or the circumstances surrounding his injury.

Nevertheless, in *Bercegeay v. Cal-Dive International, Inc.*, 583 So.2d 1181 (La.App. 1 Cir.), *writ denied*, 589 So.2d 1070 (La.1991), a diesel mechanic who was injured on land in the workshop on his employer's premises, which included facilities for docking the employer's two vessels, filed suit under the Jones Act, and in the alternative, under the Longshore Act. In reversing the trial court's grant of summary judgment in favor of the employer and dismissing the mechanic's Jones Act claim,

7

the appellate court noted that a material issue of fact remained regarding whether the mechanic's injury occurred upon navigable waters. As a result, because a question remained as to whether the mechanic's claim was covered under the Longshore Act, summary judgment dismissing his alternative Jones Act claim "cannot be supported on the basis . . . that coverage of a worker under the LHWCA precludes that worker from entitlement to Jones Act benefits." *Id*. at 1185.

Although the questions before us today differ from those faced by the *Bercegeay* court, we are nonetheless convinced that the decision provides sound guidance to the resolution of the issue of whether the WCJ erred in finding that Julien's claim fell within the jurisdiction of the State Act. The record before us contains no evidence on the issue of whether Julien was injured upon the navigable waters of the United States or any adjoining area Dynamic customarily used in loading, unloading, repairing, dismantling, or building vessels. At oral argument, counsel for the defendants insisted that the exception of lack of subject matter jurisdiction was reurged at the trial on the merits.[5] Although the transcript reflects that the issue of jurisdiction was discussed at trial, the transcript does not reflect that the exception was officially reurged. Likewise, there is no order in the record resetting the defendants' jurisdictional exception for hearing. In addition, we note

---

[5]The defendants, citing *The Daniel Ball*, 77 U.S. 557 (1870), also contended at oral argument that a waterway navigable in fact constitutes a waterway navigable in law. Despite defendants' contention to the contrary, a cursory review of this state's jurisprudence shows that the navigability of a waterway is never presumed. *See Buckskin Hunting Club v. Bayard*, 03-1428, p. 9 (La.App. 3 Cir. 3/3/04), 868 So.2d 266, 272 (in the context of a property lessee's action seeking to enjoin hunters from entering property, this court stated that "navigability is not presumed" but, rather, "is a burden to be carried by the party asserting navigability"); *Shell Oil Co. v. Pitman*, 476 So.2d 1031 (La.App. 3 Cir. 1985) (in the context of an oil companies' concursus petition to obtain resolution of an ownership dispute over royalties, this court noted that the party asserting the navigability of a waterway must prove it because it cannot be presumed); *Guillory v. Bertrand*, 375 So.2d 144 (La.App. 3 Cir.), *writ denied*, 378 So.2d 434 (La.1979) (in the context of a suit arising from a collision between two boats on Bayou Lacassine, this court determined that because there was no evidence offered to prove that the Bayou was a navigable stream, it would apply Louisiana's general tort law, rather than maritime law, because navigability is not presumed).

that the record on appeal contains no transcript or exhibits from the October 24, 2008 hearing. Thus, even if testimony and evidence regarding the exception was presented to the WCJ at the earlier hearing, no such evidence or testimony has been presented to this court. Moreover, no evidence or testimony was presented at trial which could be viewed as a basis for the WCJ to reconsider her prior determination that any benefits found to be owed to Julien were payable under the State Act.

A "judgment of a trial court is presumed correct, absent any record evidence indicating the contrary." *Williams v. Williams*, 07-541, p. 7 (La.App. 3 Cir. 10/31/07), 968 So.2d 1234, 1239 (citing *Steinhoff v. Steinhoff*, 03-24 (La.App. 3 Cir. 4/30/03), 843 So.2d 1290). Accordingly, there is no basis from which this court could conclude that the WCJ erred in finding that Julien's claim fell within the jurisdiction of the State Act. Because of our ruling, we need not discuss whether the evidence showed that Julien met the "status" requirement for coverage under the Longshore Act. Therefore, the defendants' first assignment of error lacks merit.

### *Julien's Entitlement to Compensation and Medical Benefits*

The defendants next contend that even if Julien's claim falls under the State Act, Julien failed to prove his entitlement to continuing medical and indemnity benefits because the evidence does not disclose any cause for Julien's continued complaints of pain and disability.

Julien describes the defendants' contention as ridiculous. Julien submits that the defendants wrongfully terminated his compensation benefits in October of 2009 despite the fact that Dr. John Cobb, his treating physician, stated that he was unable to work. Moreover, he stresses that despite Dr. Cobb's medical opinion, the

defendants have refused to approve any additional testing to determine the source of his pain or to approve any continuing medical treatment or prescription benefits.

Dr. Cobb signed a work status report on September 15, 2008, stating that Julien was unable to work pending diagnostic testing.[6] On March 16, 2009, Dr. Cobb recommended that Julien undergo a lumbar MRI due to his continued symptoms that "sound disc related that we have been unable to confirm."[7] At that time, Dr. Cobb noted that Julien was still unable to work. In addition, there is a note in Julien's records dated July 1, 2009, wherein Dr. Cobb stated that Julien had chronic lower back pain of undetermined etiology that did not appear to be disc related and he recommended that Julien see Dr. Daniel Hodges for treatment with a pain management program.[8] Again, Dr. Cobb opined that Julien was unable to work at the time.

Our review of the record shows that the WCJ was presented with two views of Julien's current medical condition. On the one hand, Julien testified that he continues to suffer from pain, and he presented evidence from his treating physician which indicated that he is in need of further testing to determine the source of his pain and disability. On the other hand, the defendants submit that all of the diagnostic tests performed on Julien to date have either shown normal results or have failed to show any disc involvement and that none of the tests have revealed the source of Julien's continued complaints. The WCJ concluded that Julien had met his burden of proving his continued entitlement to benefits under the State Act. It is well established that "where there are two permissible views of the evidence, a factfinder's choice between

---

[6]See Plaintiff's Exhibit 4.

[7]See Plaintiff's Exhibit 8.

[8]See Plaintiff's Exhibit 19.

10

them can never be manifestly erroneous or clearly wrong." *Foster*, 811 So.2d at 1162. After having considered the record in its entirety, including all of the medical records the parties submitted, we are unable to say that the WCJ erred in awarding Julien compensation and medical benefits. Therefore, the defendants' second assignment of error is without merit.

## ANSWER TO APPEAL

Julien filed an answer to appeal seeking additional attorney fees and costs for having to defend the appeal. The defendants filed a motion to dismiss Julien's answer to appeal, claiming that the answer was untimely because it had not been filed "not later than fifteen days after the return day or the lodging of the record whichever is later."[9] In this case, the latter of those two dates was the notice of lodging, which was mailed to the parties on April 30, 2010. Because Julien's answer was not postmarked until June 14, 2010, it will be dismissed as having been untimely filed.

## DECREE

For the foregoing reasons, we affirm the October 30, 2009 judgment of the workers' compensation judge in favor of Harold Julien and against Dynamic Industries, Inc. and Louisiana Workers' Compensation Corporation. We dismiss the answer to appeal Harold Julien filed as having been untimely filed. All costs of this appeal are assessed against the defendants.

**JUDGMENT AFFIRMED. ANSWER TO APPEAL DISMISSED.**

---

[9]See La.Code Civ.P. art. 2133.

11